681 So.2d 329 (1996)
Roger KIRKLAND
v.
RIVERWOOD INTERNATIONAL USA, INC.
No. 95-C-1830.
Supreme Court of Louisiana.
September 13, 1996.
Rehearing Denied November 15, 1996.
*330 LEMMON, Justice.[*]
In this personal injury action arising out of a workplace accident, this court is called upon to interpret the standard for determining, under La.Rev.Stat. 23:1061 as amended in 1989, whether contract work falls within the trade, business or occupation of an alleged principal who is asserting a statutory employer defense.

Facts
At the time of the accident, plaintiff was an employee of Republic Contractors, a subcontractor on a modernization project at a pulp mill operated by Riverwood International USA, Inc. Riverwood, which was engaged in the business of producing paper products at its mill, contracted with Republic for construction work in various phases of Riverwood's project to modernize its facilities.
Riverwood's mill produced and recycled white liquor, an essential ingredient used in the processing of wood chips to make paper, through two identical systems. Each system contained a lime conveyor that delivered lime to the slaker. Riverwood contracted with Republic to remove the existing conveyors and to replace them with state-of-the-art electronically controlled conveyors. The contract price for this work was $72,871.71.
During the first phase of the project, Republic replaced one of the conveyors while production at the mill was shut down. When the first phase was completed, the mill resumed production. The second phase then began, with only one of the mill's dual lines operating. During this second phase, plaintiff was injured while performing part of the contract work.
At the time of his injury, plaintiff was working as one of Republic's four-man crew replacing the second conveyor. He lost his footing, falling approximately thirty feet from the tank on which he was standing and rolling *331 into a mixture of white liquor and alkali that had accumulated on the ground. He broke two vertebrae in the fall and suffered severe burns from his contact with the spilled substances.
Plaintiff filed this tort action against Riverwood, alleging both strict liability and negligence. Riverwood filed a motion for summary judgment, asserting that plaintiff was performing work that was an integral part of Riverwood's trade, business or occupation so as to render plaintiff a statutory employee whose exclusive remedy was workers' compensation.
The trial court granted the motion and rendered judgment in favor of Riverwood. On plaintiff's appeal, the court of appeal reversed. 26,741 (La.App.2d Cir. 6/21/95), 658 So.2d 715. We granted Riverwood's application for certiorari, 95-1830 (La.11/3/95), 661 So.2d 1370, because the case presented a significant unresolved issue of law for which this court should provide guidance to lower courts and litigants, and because there were conflicting decisions among the state courts of appeal. La.Sup.Ct.R.X, §§ 1(a)(1) and 2.

History of Statutory Employer Doctrine
Prior to the 1989 amendment, La.Rev.Stat. 23:1061, which had remained virtually unchanged since the 1914 adoption of the Workers' Compensation Act, provided:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor. (emphasis added).
Because compensation responsibility is keyed to the existence of an employment relationship, the Act from its inception addressed the possibility of an employer's interposing an independent contractor or subcontractor between itself and its injured worker in order to avoid compensation liability. The statutory solution, adopted by most state compensation laws, was to deem an entity that attempted to evade compensation responsibility to be a statutory employer and to impose contingent compensation responsibility on that entity. Wex S. Malone & H. Alston Johnson, III, Workers' Compensation Law and Practice, 13 Louisiana Civil Law Treatise, § 121 (3d ed. 1994).
The Louisiana provision for imposing compensation responsibility on such devious employers is La.Rev.Stat. 23:1061. The original purpose of Section 1061 clearly was to preclude a principal from contracting out "the essential economic activities of an enterprise to impecunious sub-contractors so as to exculpate himself from compensation liability." Meche v. Farmers Drier & Storage Co., 193 So.2d 807 (La.App. 3d Cir.), cert. denied, 250 La. 369, 195 So.2d 644 (1967). To achieve that purpose, Section 1061 created an additional source of compensation recovery for the injured employee, subjecting any person (called a principal or statutory employer) to compensation liability when that person undertakes work that is part of his trade business or occupation by means of a contract with another or when that person contracts to perform work and sub-contracts a portion of that work to another. Moore v. RLCC Technologies, Inc., 95-2621 (La.2/28/96), 668 So.2d 1135 (citing Malone & Johnson, supra, § 128).
Nothing in the Act expressly provided, or even suggested, that a principal was entitled to any tort immunity, even if the principal *332 actually had to pay compensation benefits to an injured employee. Indeed, the only provision in the original Act that conferred any tort immunity was La.Rev.Stat. 23:1032, and that provision did not mention a principal.[1] Moreover, a principal was able to avoid compensation exposure completely by requiring that any contractor carry workers' compensation insurance for the contractor's employees (although that might raise the cost of the contract) or by indemnity against the contractor under La.Rev.Stat. 23:1063 for any compensation paid.
In 1950, this court, and not the Legislature, granted tort immunity to a principal for the first time. In Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), without any discussion of the absence in Section 1061 or 1032 of any grant of tort immunity to a principal, or of a principal's apparent ability to avoid any compensation liability, or of the question whether immunity should be conferred only if a principal actually pays compensation, this court maintained an exception of no cause of action which limited an injured employee's remedy against a principal to workers' compensation.
In the view of some respected commentators, the Thibodaux decision distorted Section 1061, which was "intended to broaden the scope of recovery available to laborers," but which "has in fact been applied to limit this recovery." George W. Pugh, Jr., Judge Albert Tate, Jr. and the Employee Personal Injury Action: An Overview, 47 La.L.Rev. 993, 1004 (1987). In any event, the Thibodaux decision shifted the use of Section 1061 from its intended compensatory purpose of providing an injured worker with an additional source of compensation to a defensive use of the statutory employment concept which precluded an injured worker's tort recovery without any quid pro quo from the principal who, because of his ability to avoid compensation liability, effectively became immune both in tort and in compensation.
This shift from the original purpose of Section 1061 is significant from both a procedural and a policy standpoint. Procedurally, this shift changed the burden of proof from the plaintiff seeking compensation to the defendant seeking to invoke the statutory employment relationship as an affirmative defense. As a policy matter, Section 1061, when invoked to further its intended compensatory purpose that an injured worker's true employer would be responsible for compensation, was accorded a liberal construction because of the beneficial purpose of the Workers' Compensation Act. Williams v. Shell Oil Co., 677 F.2d 506, 508 (5th Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); Malone & Johnson, supra, § 126. However, when Section 1061 began to be used defensively by a principal seeking to avoid tort liability to the employee of a contractor, the same policy concerns were not applicable.[2]Malone & Johnson, supra, § 126. Indeed, when Section 1061 is used defensively, strict construction is arguably warranted. See Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226, 229-30 (La.1985)(Lemmon, J., concurring).
Despite these policy considerations, the Thibodaux decision, in judicially expanding tort immunity to a principal, also established a liberal interpretive analysis of the central issue of the statutory employment relationship, i.e., whether the contract work was part of the alleged principal's trade, business or occupation. The Thibodaux decision enunciated a liberal "integral relationship" standard for defining the scope of the statutory employment relationship.
In Thibodaux, Sun Oil, an oil producer, contracted with J.C. Chance Well Service to perform work, including drilling a well. Chance subcontracted part of the work, including fishing lost tools out of the well, to Houston Oil Field Material. As a result of the collapse of an oil derrick belonging to Sun Oil, an employee of Houston was injured and an employee of Chance was killed.
*333 In the ensuing tort action, Sun Oil pleaded an exception of no cause of action, contending that the plaintiffs' exclusive remedy was workers' compensation. After the trial court sustained the exceptions, the court of appeal affirmed, reasoning that Sun Oil was engaged in the business of exploring for and producing oil, and that part of its business was the drilling of wells and the reworking of wells when necessary. The court concluded that Chance, in drilling the oil wells and doing work incidental thereto (reworking oil wells), was engaged in part of Sun Oil's business. Likewise, the court held that Houston, in "fishing out" tools stuck in the same well, was engaged in activities "so closely related to the actual drilling of the well as to become a component part of it." 40 So.2d at 765. The court further noted that the work "is so closely related to its [Sun Oil's] business that it can be said to be a part of its operation in the production of oil." Id.
This court also affirmed, reasoning that "[t]he drilling of wells, the reworking if necessary, and the `fishing out' of well tools and implements which become stuck in the course of drilling the well are all interrelated and component parts, though different phases, of oil production. In other words, both Thibodaux and Baker were performing services in connection with work which was part of the business, trade and occupation of Sun Oil Company, or so closely related thereto as to become an integral part thereof." 49 So.2d at 854 (emphasis added).
The underscored language, although not expressly announced as the standard for determining trade, business or occupation, became the basis for the so-called integral relationship test which was used in cases following Thibodaux to liberally construe tort immunity in favor of principals.
Under the liberal integral relationship testalso referred to as the "essential to business" testfew instances of contract work were held not to be a part of the principal's business. See Foster v. Western Electric Co., 258 So.2d 153 (La.App. 2d Cir. 1972) (holding that the operation of a plant cafeteria was part of the plant owner's business); Slocum v. Lamartiniere, 369 So.2d 201 (La.App. 3d Cir.), cert. denied, 372 So.2d 569 (1979) (holding construction of new building was part of a grocer's business).

Trend toward Narrow Construction of Statutory Employer Defense
At first, Thibodaux's liberal integral relationship test for the statutory employer defense was virtually all-encompassing. However, the courts began to recognize some factors which tended to take the contract work outside of the principal's trade, business or occupation, even under the test referred to in Thibodaux. One area that traditionally has been considered outside the principal's business is that of new construction and reconstruction of the principal's buildings and facilities.
This court in Reeves v. Louisiana and Ark. Ry. Co., 282 So.2d 503 (La.1973), held that an oil company's engaging a contractor to construct a new petroleum coking unit at its refinery was not part of its business operations.[3] This court reasoned that "it was not Humble's business practice to engage in new construction of this type and magnitude, nor does the record support a conclusion that this type work was customarily done by Humble or other employers similarly situated." Id. at 508. In that case, this court did not mention any "integral relationship" or "essential to business" standard.
Despite suggestions that this court reconsider its 1950 Thibodaux decision,[4] neither *334 this court nor the Legislature reexamined the issue until 1976 when the Legislature set out to abolish the so-called "executive officer" tort actions.[5] In so doing, the Legislature not only added employees of the employer as persons immune in tort suits by an injured employee, but also added principals and employees of principals to the list of entities granted tort immunity. The 1976 amendment legislatively granted immunity to a principal for the first time, codifying the Thibodaux case.[6]See Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226, 229 (La.1985)(Lemmon, J., concurring). Particularly, Section 1032 was amended to read in part:
The rights and remedies herein granted to an employee or his dependent ... shall be exclusive of all other rights and remedies of such employee against his employer, or any principal or any ... employee of such employer or principal.... For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. (emphasis added).
The 1976 amendment to Section 1032, in conferring tort immunity to a principal when the work being performed is a part of the principal's trade, business or occupation, tracked verbatim the language in Section 1061 defining a principal.
During the ten years following the 1976 amendment, this court began to reexamine "the expansive trend taken by the courts in recent years in the so-called statutory employer cases." Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226, 229 (La.1985)(Lemmon, J., concurring). This decade may be characterized as a time of judicial uneasiness with an expansive interpretation of a principal's trade, business or occupation. Malone & Johnson, supra, § 364. In a series of cases, this court began a discernable shift from a liberal to a more restrictive construction of the statutory employer defense.[7]See Thompson v. South Central Bell Tel. Co., 411 So.2d 26 (La.1982); Benson v. Seagraves, 436 So.2d 525 (La.1983); Lewis v. Exxon Corp., 441 So.2d 192 (La.1983); Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226 (La.1985).

The Berry Decision
The restrictive construction of the statutory employment relationship, when used as a defense, culminated in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). In Berry, this court criticized the "integral relationship" test, noting that this "almost limitless standard yielded inconsistent and often illogical results since almost everything could be said to be integrally related to the principal's trade, business or occupation." Id. at 937. Further, this court declared that it was expressly "abandon[ing] the `integral relation' test" and was adopting a test "more in line with the purpose of sections 1032 and 1061." Id. Accordingly, this court enunciated the following three-tier analysis for determining whether contract work is part of an alleged principal's trade, business or occupation:
1. Is the contract work specialized? Specialized work is, as a matter of law, not a *335 part of the principal's trade, business, or occupation, and the principal is not the statutory employer of the specialized contractor's employees.
2. Where the contract work is non-specialized, the court must compare the contract work with the principal's trade, business or occupation. At this second step, the court should make the following inquiries:
(i) Is the contract work routine and customary? That is, is it regular and predictable?
(ii) Does the principal have the equipment and personnel capable of performing the work?(iii) What is the practice in the industry? Do industry participants normally contract out this type of work or do they have their own employees perform the work?
3. Was the principal engaged in the work at the time of the alleged accident?
Id. at 937-39.
Thus the Berry decision changed the law by precluding statutory employer status as a defense when (1) the work was specialized per se, or (2) when the principal was not actually engaged in the contract work at the time of the accident. Malone & Johnson, supra, § 364. The second tier of the socalled Berry test, however, was a list of some of the factors that the courts had considered in determining statutory employment in the ten years preceding Berry.
In an apparent response to Berry's pronouncement of situations in which the statutory employer defense is absolutely precluded, the Legislature in 1989 amended La.Rev. Stat. 23:1061 to add the following sentence, which directly tracks several of the factors enumerated in Berry, to the first paragraph of Section 1061:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.[8]
The issue which prompted our grant of certiorari in this case is the effect of the 1989 amendment on the three-tiered Berry analysis for determining statutory employer status and on the jurisprudence preceding Berry.

Present Standard for Determining Statutory Employer Defense
The starting point in our analysis is the statutory language of Section 1061, as amended in 1989.[9] The amended section is silent as to the standard to be applied for determining statutory employer status. Nonetheless, given that the amendment closely tracks the factors this court laid out in Berry, the Legislature obviously intended to alter the Berry test. The question thus becomes whether the Legislature, as the federal appellate court[10] and some of the state courts of appeal have held, intended to overrule Berry and to return to Thibodaux's more liberal integral relationship test, or whether the Legislature simply intended to abrogate the rigid and mechanical application of the three-tiered analysis set forth in Berry and return to the pre-Berry consideration of all relevant factors in determining statutory employer status under the totality of the circumstances.
The majority of Louisiana appellate courts[11] have adopted the former view, also *336 expressed by the federal Fifth Circuit, that the amendment was meant to overrule Berry and to resurrect the integral relationship test enunciated in Thibodaux.[12] The language of 1989 amendment, however, does not support such an interpretation. The Legislature merely stated that the presence of one or more of the factors enumerated in Berry "shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation...." This language, although clearly a direct attack on Berry, does not "mean that those factors are not to be considered; rather, it appears to mean that no single factor (such as specialized versus nonspecialized work) may be used to defeat the defense of immunity raised by the principal." H. Alston Johnson, III, Workers Compensation, 50 La. L.Rev. 391, 397 (1989).
We conclude, agreeing with Professor Johnson, that the 1989 amendment was designed primarily to overrule the part of Berry dealing with specialization per se and to declare that a finding of specialization is not determinative of the absence of a statutory employment relationship.[13] The 1989 amendment does not prohibit the court's considering the factors enumerated in Berry; the amendment merely proscribes making any one of the factors conclusive of the determination of whether the contract work was part of the principal's trade, business or occupation. In effect, we interpret the 1989 amendment as intended to overrule Berry, but not intended to overrule this court's decisions, in the ten years preceding Berry, that the court was to consider all pertinent factors under the totality of circumstances.
We therefore hold that the appropriate standard under the amended Section 1061 for determining whether the contract work is part of the alleged principal's trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another.[14] Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;

*337 (6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Thus the determination of whether the contract work was part of the principal's trade, business or occupation is a factual issue to be resolved on a case-by-case basis. Lewis v. Exxon Corp., 441 So.2d 192 (La. 1983). Once the Legislature declared in 1989 that no single factor is determinative, the fact-based nature of the inquiry virtually necessitates a multi-factored, case-by-case factual inquiry under the totality of the circumstances.[15] A totality of the circumstances inquiry is frequently difficult to accomplish on motion for summary judgment which requires a showing that there is no genuine issue of material fact that would defeat entitlement to judgment as a matter of law. Riverwood made no such showing and did not accomplish such an inquiry in the trial court, whose granting of summary judgment was properly reversed.
For these reasons, the judgment of the court of appeal is affirmed.
KIMBALL, Justice, dissenting.
I believe the legislature intended to overrule the Berry v. Holston Well Service[1] three-level inquiry and return to the pre-Berry "integral relation" test outlined by this court in Thibodaux v. Sun Oil Co.[2]; therefore, I respectfully dissent. The most central and material part of the 1989 amendment to LSA-R.S. 23:1061 is that the types of work specified "shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation...."[3] In my view, the legislature's action eliminates the Berry factors' usefulness in a statutory employer determination, either alone or under a totality of the circumstances analysis.
At the time of Berry, this court was "shift[ing] its interpretive analysis regarding the statutory employer defense from one which favored a liberal application" to a more restrictive interpretation.[4] This court initiated this shift "[b]eginning with the case of Benson and followed by the cases of Lewis and Rowe...."[5] Therefore, "[f]rom a reading of Benson and its progeny" this court began to formulate a three-level analysis.[6] To factors taken mainly from the Benson line of cases, we added the specialization factor and another concerning the principal's engagement in business.[7] Whether or not Berry actually changed the law, or merely organized years of statutory employer jurisprudence,[8] the legislature's 1989 amendment zeroed in on the Berry "test", tracking its language, in an attempt to return the law to its pre-Berry status.[9]
*338 I interpret this enactment to be a return to the Thibodaux "integral relation" test.[10] To hold otherwise is to render the 1989 amendment, and the legislature's obvious intent,[11] inconsequential; for to resurrect the Berry factors in a totality of the circumstances framework is to resurrect Berry.[12] That approach interprets the legislature's action not as a substantive repudiation of the factors which Berry comprised, but a pro forma correction intended to abrogate Berry's rigid application. Moreover, by legislatively overruling Berry, I believe the legislature voiced disagreement with Berry's abandonment of the integral relation test in favor of the three-tiered method of analysis. I agree with the majority that extending tort immunity to a statutory employer who has not paid compensation contradicts a basic principle upon which the statutory scheme is based, which the majority has termed a "quid pro quo" between the principal and worker.[13] However, I conclude the legislature rejected this rationale in the 1976 codification of principal tort immunity originally conferred by this court in Thibodaux.[14] In addition, I find the legislative purpose behind the 1989 amendment was to broaden the availability of the "statutory employer defense" and depart from the Berry framework. Thus, I believe the legislature's departure from the Berry test, which itself was crafted largely from cases following the 1976 amendment to section 1032,[15] revived the Thibodaux test to determine whether the work was part of the principal's trade, business, or occupation.
Based upon the foregoing, I would reverse the court of appeal's judgment and reinstate the judgment of the trial court, which applied the integral relation test to the facts of this case. Accordingly, I respectfully dissent.
VICTORY, Justice, dissenting.
I dissent for the reasons assigned by Justice Kimball and the reasons given in Moore v. Crystal Oil Co., 626 So.2d 792 (La.App. 2 Cir.1993), reversed, 93-3103 (La.2/25/94), 632 So.2d 758.
In my view the majority's test will produce the same result in almost every case as if the Berry test were applied, a result the Legislature was clearly attempting to change.

Reasons dissenting from denial of Rehearing by Justice Marcus filed 11-15-96
MARCUS, Justice, dissenting.
On further consideration, I am of the opinion that the dissents were correct, that is, the legislature intended to overrule the Berry decision and return to the "integral relation" test outlined by this court in Thibodaux. In my view, the majority's test will produce the *339 same result reached under Berry, making the 1989 amendment to La.R.S. 23:1061 meaningless.
NOTES
[*] Because of the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit, there was no justice designated "not on panel" under Rule IV, Part II, § 3. Panel included Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[1] The original Section 1032 also did not mention an employer, but simply declared that compensation rights were "exclusive of all other rights and remedies."
[2] "It is only when the principal seeks to avoid his compensation obligation by farming out part of his own normal operations to a contractor that an evil arises requiring exceptional treatment. Otherwise, the compensation obligation should rest on the contractor alone." Malone and Johnson, supra, § 78.
[3] The court cited Horrell v. Gulf Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709 (1930), a case involving an attempt to bring the injured employer under compensation coverage. In Horrell, the court stated:

[A] manufacturing concern, upon organization, may contract with an independent contractor for the erection of its factory building without retaining liability under the Compensation Act to employees of the independent contractor who undertakes the construction. It is no part of the trade, business, or occupation of the manufacturing concern to erect its factory building. Its business is to operate it after its erection.
[4] See, e.g., Broussard v. Heebe's Bakery, Inc., 254 So.2d 284 (La.App. 4th Cir.1971) (Lemmon, J., concurring). This court granted certiorari in Broussard, but reversed on other grounds and thus did not reach the issue. Concurring, Justice Tate expressed his view that extending tort immunity to a statutory employer who had not paid compensation was inconsistent with the statute's true purpose of "afford[ing] an injured employee an alternative remedy in compensation against a principal, who is entitled to indemnification from the true employer of the injured worker." Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656, 661 (1972) (Tate, J., concurring). See also George W. Pugh, Jr., Judge Albert Tate, Jr. and the Employee Personal Injury Action: An Overview, 47 La.L.Rev. 993, 1005-06 (1987).
[5] Because La.Rev.Stat. 23:1032 did not extend tort immunity to employees of the employer, the courts had recognized under certain circumstances a cause of action by an injured employee against certain other employees of the employer, who were frequently covered as "executive officers" under the employer's insurance policy. See Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App. 1st Cir.1958); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
[6] The constitutionality of that legislative granting of immunity to principals in Section 1032 was upheld by this court in Moore v. RLCC Technologies, Inc., 95-2621 (La.2/28/96), 668 So.2d 1135.
[7] The decision in Berry v. Holston Well Service, Inc., 488 So.2d 934, 937 (La.1986) noted that this court had "shifted its interpretive analysis regarding the statutory employer defense from one which favored a liberal application of the doctrine to one which is more restrictive."
[8] The 1989 amendment, in addition to adding the language at issue in the case, designated the existing paragraphs as Subsections A and B, and made other stylistic changes.
[9] The 1989 amendment added to the definition of statutory employer set forth in Section 1061, which addresses a principal's compensation liability. However, the amendment's real purpose apparently was to address the recurring tort immunity issue which is dealt with in Section 1032.
[10] See Pierce v. Hobart Corp., 939 F.2d 1305 (5th Cir.1991).
[11] See Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4th Cir.), cert. denied, 596 So.2d 211 (La.1992)(quoting Pierce v. Hobart Corp., 939 F.2d 1305 (5th Cir.1991) with approval); Frith v. American Motorists Ins. Co., 613 So.2d 249, 251 (La.App. 1st Cir.1992), cert. denied, 617 So.2d 932 (La.1993)(noting that "[b]y overruling Berry, the amendment effectively returned the courts to a more liberal standard of tort immunity"); Hutchins v. Hill Petroleum Co., 609 So.2d 312 (La.App. 3d Cir.1992).
[12] Indeed, it was not until the court of appeal's decision in the instant case that a conflict in the circuits was created.
[13] A noted commentator expressed this view, stating that "[i]n 1989, Louisiana amended its statute to repeal the judicial rule that allowed tort suits against statutory employers if the direct employer's work was considered specialized." Arthur Larson, 1C Workmen's Compensation Law § 49.16(a). Indeed, support for this view can be found in the fact that, prior to Berry, specialization, while a relevant factor, was not determinative. Meche v. Farmers Drier & Storage Co., 193 So.2d 807 (La.App. 3d Cir.), cert. denied, 250 La. 369, 195 So.2d 644 (1967).
[14] Professor Larson has explained:

From these cases it will be readily seen that the test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely essential to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.
Ordinarily construction work, such as building a factory structure, installing a conveyor system ... would be considered outside the trade or business of a manufacturing or mercantile establishment. But if the defendant is a business which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance, perhaps even having a `construction division,' or which can be shown to have handled its own construction in the past, a job of construction delegated to a contractor will be brought within the statute.
Arthur Larson, 1C Workmen's Compensation Law § 49.16(j) (emphasis added).
[15] We view the 1989 amendment as pruning the first and third tiers of Berry and leaving intact the middle tier, while adding to that middle tier the additional non-determinative factors of specialization and of the principal's engagement in the business at the time. The 1989 amendment thus overruled the determinative use of specialization and the principal's engagement in the business, and added these simply as additional factors to be weighed in the overall factual determination. This view is consistent with the pre-Berry case law which treated specialization as persuasive, but not conclusive. Meche v. Farmers Drier & Storage Co., 193 So.2d 807 (La.App. 3d Cir.), cert. denied, 250 La. 369, 195 So.2d 644 (1967).
[1] 488 So.2d 934 (La.1986).
[2] 218 La. 453, 49 So.2d 852, 854 (1950).
[3] 1989 La.Acts 454, § 3 (emphasis added).
[4] Berry, 488 So.2d at 937.
[5] Id.; see Benson v. Seagraves, 436 So.2d 525 (La.1983); Lewis v. Exxon Corp., 441 So.2d 192 (La.1983); Rowe v. Northwestern Nat'l Ins. Co., 471 So.2d 226 (La.1985).
[6] Berry, 488 So.2d at 937.
[7] See ante at 334-335.
[8] See Wex S. Malone & H. Alston Johnson, III, Workers' Compensation Law & Practice, § 364 at 181-82, 14 La. Civil Law Treatise (3d ed. 1994).
[9] The 1989 amendment tracks the first and second tiers of the Berry analysis, specifically rejecting those factors. The amendment implicitly nullifies the third tier, relative to whether the principal actually engaged in the contract work at the time of injury, by stating that the principal may still be considered a statutory employer "regardless of whether the principal has the equipment or manpower capable of performing the work." Therefore, the legislature rejected entirely the Berry scheme.
[10] Under the "integral relation" test, a principal is deemed to be a statutory employer if the contract work is an integral and/or essential part of the principal's trade, business, or occupation. Thibodaux, 49 So.2d at 854.
[11] Ante at 335.
[12] I respectfully disagree with the majority that the legislature, by amending section 1061, intended merely to suppress "one or more factors enumerated in Berry ...." Ante at 336.
[13] See ante at 332 & 334 n. 4.
[14] George W. Pugh, Jr., Judge Albert Tate, Jr. and the Employee Personal Injury Action: An Overview, 47 La.L.Rev. 993, 1006 (1987) (The 1976 amendment "foreclosed any further judicial reconsideration of the concerns raised by Judge Tate in Broussard, and the imbalance in the act remains."); see Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656, 661 (1972) (Tate, J., concurring).
[15] See ante at 334; see also Brock v. Chevron Chemical Co., 750 F.Supp. 779, 780-81 n. 2 (E.D.La.1990) (Collins, J.) (finding the Benson, Lewis, and Rowe cases began the departure from a liberal construction of the statutory employer doctrine), vacated on other grounds, 946 F.2d 1544 (5th Cir.1991).