793 So.2d 533 (2001)
Rayford LOFLIN, Plaintiff-Appellant,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellee.
No. 34,976-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*534 Richard B. King, Jr., Shreveport, Counsel for Plaintiff-Appellant.
Herschel R. Richard, Jr., Shreveport, Counsel for Defendant-Appellee.
Davenport, Files & Kelly, by Mike C. Sanders, Monroe, Counsel for Third Party Defendant-Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
NORRIS, Chief Judge.
The plaintiff, Rayford Loflin, appeals a summary judgment decreeing him the statutory employee of the defendant, International Paper Company ("IPCO"), and *535 dismissing with prejudice his tort suit against IPCO and an IPCO employee, Roland Esteva. We affirm.
Loflin, a welder, was employed by Woods Tank Inc. In late 1993, IPCO contracted with Woods Tank to repair or rebuild a "dirty white-water tank" at its Louisiana Mill in Bastrop. Early in the morning of January 5, 1994, Loflin was putting the finishing touches on the outside of the tank when water gushed out the side, knocking him off the ladder and causing him to fall 12-14 feet to the ground. In October 1994 he filed this tort suit against IPCO; he later added Roland Esteva, an IPCO project engineer.
The defendants moved for summary judgment, asserting statutory employment under R.S. 23:1061 A in that Woods Tank was performing work part of IPCO's trade, business or occupation. In support they filed two depositions (including Loflin's), three affidavits and various attachments. In opposition, Loflin filed another copy of his own deposition. The motion was submitted in April 1997 but not decided until April 2000.
The District Court granted defendants' motion, finding that their affidavits and depositions satisfied all eight of the criteria for statutory employment under Kirkland v. Riverwood Int'l USA, 95-1830 (La.9/13/96), 681 So.2d 329. This met the burden of production under La. C.C.P. art. 967. The court found that Loflin offered only a list of allegations regarding the Kirkland factors but no summary judgment evidence to support any of them. The court therefore found statutory employment, granted the summary judgment and dismissed the suit. Loflin appeals.
Because Loflin's accident occurred in January 1994, it is regulated by the Supreme Court's Kirkland analysis and not by the 1997 amendment to R.S. 23:1061 A.[1]See, Clavier v. Lay Down Service Inc., 00-00701 (La.App. 3 Cir. 12/20/00), 776 So.2d 634. At the time of Loflin's accident, § 1061 A provided that when a principal undertakes to execute any work, "which is part of his trade, business, or occupation or which he had contracted to perform," and he contracts with a contractor to perform that work, then the principal is liable in workers' compensation to the contractor's employees who are injured while working on the job.
In Kirkland, the Supreme Court listed eight fact-intensive yet non-exclusive criteria for finding statutory employment under R.S. 23:1061 A: (1) the nature of the business of the alleged principal; (2) whether the work was specialized or not; (3) whether the contract work was routine, customary, ordinary or usual; (4) whether the alleged principal customarily used his own employees to perform the work, or contracted out all or most of it; (5) whether the alleged principal had the equipment and personnel capable of performing the contract work; (6) whether those in similar businesses normally contract out this type of work, or have their own employees do it; (7) whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and (8) whether the principal was engaged in the contract work at the time of the incident.
Once statutory employment is found, the claimant's exclusive remedy is workers' compensation and the principal is immune *536 from tort actions by the contractors' employees arising from on-the-job injuries. La. R.S. 23:1032 A. This immunity extends not only to the principal but to any employee of the principal. La. R.S. 23:1032 A(1)(b).
In Kirkland, the Supreme Court remarked that the determination of whether the contract work is part of the principal's trade, business or occupation is a factual issue to be resolved on a case-by-case basis; a "totality of the circumstances inquiry is frequently difficult to accomplish on motion for summary judgment." Id., at p. 15, 681 So.2d at 337.
Since that time, however, the legislature has substantially revised the law of summary judgments. La. Acts 1996 (1st Ex.Sess.), No. 9, § 1; Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41.[2] Specifically, art. 966 A(2) now provides that summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except certain domestic matters. "The procedure is favored and shall be construed to accomplish these ends." In effect, this levels the field between the parties in that summary judgment evidence submitted by both sidesto support and oppose the motionis scrutinized equally, without any presumption in favor of a full trial on the merits. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), at p. 7, 755 So.2d 226, at 231; Hardy v. Bowie, 98-2821 (La.9/8/99), at p. 5, 744 So.2d 606, at 610. In this spirit this court has conducted a de novo review of the summary judgment evidence. Independent Fire Ins. Co. v. Sunbeam Corp., supra.
The summary judgment evidence includes affidavits by W. Ralston Lecky III and Charles D. Arant, IPCO's managers of equipment reliability and maintenance, and the deposition of Roland Esteva, IPCO's production process manager. The affidavits state that IPCO is a large corporation which manufactures paper products; it also has employees and equipment needed to perform general repair and maintenance work, such as welding, pipefitting and ironwork precisely the work that Loflin was performing when injured. The affidavits also state that the dirty white-water tank was an integral part of the operation;[3] maintenance or repair, or rebuilding the tank, was routine and ordinary for the business; and other companies in the industry also use their own employees for this type of work. Esteva also describes this project as "routine maintenance." R.p. 128. The affidavits both state that the type of welding involved in this job is not specialized, requiring no skills not possessed by IPCO's own employees. According to the affidavits and Esteva's deposition, however, at the time all IPCO's *537 general mechanics were busy on other maintenance projects, so a contractor was needed to repair or rebuild the dirty white-water tank. The affidavit of Larry Woods, president of Woods Tank, stated that his bid price included the cost of workers' compensation coverage, so IPCO ultimately paid Loflin's premiums; the contract attachments confirm this.
Viewed according to the mandates of art. 966 A(2)i.e., without strict scrutiny or any presumption in favor of a full trial these papers clearly establish every essential element of statutory employment under Kirkland and R.S. 23:1061 A. The burden then shifted to Loflin to produce summary judgment evidence setting forth "specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967. Loflin filed his own deposition (already filed by defendants), which chiefly relates the facts surrounding the accident, the safety equipment available, and the nature of his injury. He also called the project "building a new tank" or a "tank replacement." R.p. 250. However, Esteva testified that the project was actually to replace the shell and floor of the tank, R.p. 20, and Arant's deposition stated that this was general repair. Since the nature of the project is clearly established, the attempt to label it as new construction creates no genuine issue of material fact.
In brief, Loflin also argues that "it was the normal routine basis for IPCO to contract this type of work out." However, this is a bare assertion unsupported by any record facts. It is a "mere allegation or denial" which does not suffice to create a genuine issue for trial. La. C.C.P. art. 967.
Finally, Loflin cites several per curiam opinions in which the Supreme Court summarily reversed summary judgments that had found statutory employment; these show, he contends, that summary judgment is generally not appropriate for such a fact-intensive determination.[4] We note, however, that all these decisions predate the 1996 amendment to art. 966. Since the amendment, courts have readily rendered summary judgments, on a proper showing, to find statutory employment. See, e.g., Bonds v. Byrd, 33,777 (La.App. 2 Cir. 8/23/00), 765 So.2d 1205; Joseph v. Parish of St. John the Baptist, 00-304 (La.App. 5 Cir. 10/19/00), 772 So.2d 737; Jones v. Vela's Garage & Rental Inc., 97-2486 (La. App. 4 Cir. 5/27/98), 717 So.2d 246, writ denied 98-1760 (La.10/9/98), 726 So.2d 35.
For these reasons, the summary judgment finding statutory employment was proper. Loflin's exclusive remedy is workers' compensation. The judgment is affirmed at Loflin's costs.
AFFIRMED.
NOTES
[1] The 1997 amendment greatly enlarged the scope of statutory employment, overruling Kirkland. See, Felan v. F & F Trucking Inc., 97-983 (La.App. 3 Cir. 2/4/98), 708 So.2d 430, writ denied 98-0595 (La.4/24/98), 717 So.2d 1172, fn. 1; Boyd v. South Central Bell Tel. Co., 99-1631 (La.App. 4 Cir. 12/15/99), 750 So.2d 1093, writ denied 00-0130 (La.3/17/00), 756 So.2d 1146, fn. 2.
[2] See also, generally, Mark Tatum & William Norris III, Summary Judgment and Partial Summary Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131 (1998). A subsequent amendment to La. C.C.P. art. 996 by La. Acts 1997, No. 483, § 1, does not apply to the instant case, which was submitted in April 1997.
[3] "Water extracted from pulp in the production of paper involving FDA-approved colors is captured and sent to the dirty white water tank versus the clean white water tank. Water from the clean white water tank can be used again directly in the paper-making process since it does not contain any color that may contaminate the paper. The dirty white water cannot be used in the paper-making process again, but is used in the pulping process where color is naturally removed in the bleaching process. The reuse of the dirty while water * * * requires the use of a tank, and this process enables the mill to lower its cost of production by avoiding more expensive `fresh' water and the cost of effluent treatment required when water is discharged." Arant's affidavit, ¶ 9.
[4] See, e.g., Moore v. Crystal Oil Co., 93-3103 (La.2/25/94), 632 So.2d 758; Hanks v. Shell Oil Co., 94-0483 (La.4/4/94), 635 So.2d 1118; Vickers v. Cajun Concrete Services Inc., 94-0930 (La.6/3/94), 637 So.2d 487; Picard v. Zeit Exploration Co., 94-1555 (La.9/30/94), 642 So.2d 862.