2CHEHARDY, Judge.
In this personal injury case, plaintiff, Alastair Merrick, appeals a summary judgment dismissing all of his claims against defendant, Bredero Price Company. We affirm in part and remand in part.
On April 1,1997, Bredero Price (“Brede-ro”) contracted with Evans Temporary Service (“ETS”) of New Orleans, Inc., to supply general labor at its pipe yard on Peters Road in Harvey. On April 14, 1997, Alastair Merrick (“Merrick”), while working at Bredero’s pipe yard as a laborer, was injured when he and a Bredero employee attempted to dislodge a pipe jammed in the machine that rolled pipes out of the building. While attempting to dislodge the pipe, Merrick’s hands were caught between the roller and the pipe and crushed.
On April 3, 1998, Merrick filed suit for damages against Bredero and ABC Manufacturing Company, Inc. for negligence and intentional tort. He alleged that Bre-dero was negligent because it failed to adequately maintain the machinery on its site and/or modified the machinery, which caused Merrick’s injuries. The petition also alleged that Bredero knew with substantial certainty its actions would cause Merrick’s injury. The petition further alleged that Bredero thwarted Merrick’s attempts to learn the name of the manufacturer of the machine that injured him, refused to cooperate by disclosing the manufacturer’s name and intentionally denied him access to the ^machinery, an intentional cause of Merrick’s emotional distress. On April 16, 1998, Merrick amended his petition to name Bredero as the manufacturer of the machine, alleging that Bredero knew that its machine was malfunctioning, still continued to use the defective machine, and knew with substantial certainty that its machine would cause injury.
On April 27, 1998, Bredero answered Merrick’s petition, denying his allegations and pleading nine affirmative defenses, including their status as Merrick’s statutory employer. On February 12, 1999, ETS, Merrick’s employer, intervened seeking reimbursement for medical and compensation benefits paid to Merrick.
On February 9, 2000, Bredero filed a Motion for Summary Judgment alleging that Merrick’s recovery against them was limited to workers’ compensation because Merrick was their statutory employee, under La.R.S. 23:1061. On July 31, 2000, the trial judge granted summary judgment in favor of Bredero and dismissed Merrick’s suit. On August 31, 2000, at Bredero’s request, the trial judge rendered an amended judgment, pursuant to La.C.C.P. art. 1951, to correct the spelling of one word in the judgment. Notice of judgment was issued on August 31, 2000. On *277 September 29, 2000, Merrick filed his Motion for Appeal.
On appeal, Merrick asserts that the trial judge erred in finding that the relationship between Bredero and ETS was not one of vendor-vendee. He also contends that, even if there is no vendor-vendee relationship in this case, that the trial judge failed to properly apply the statutory employer test established in Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329. He specifically contends that Brede-ro was not his statutory employer because ETS, an independent enterprise that insured its workers, was his direct employer and he was engaged in work for ETS as part of his contract with ETS at the time of the incident.
Workers’ compensation is the exclusive remedy for persons injured in the course and scope of their employment. La. R.S. 23:1032. Employees of contractors are considered to be employees of the principal under certain circumstances set out by statute. Under La. R.S. 23:1061(A), as it read at the time of Merrick’s injury, an employee is a statutory employee:
|4When any person, in this Section referred to as the ‘principal,’ undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the ‘contractor,’ for the execution by or under the contract of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspe-cialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal’s direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal’s trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
At the time of Merrick’s injury, the determination of statutory employment status was made pursuant to a three-step analysis set forth in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), as limited by the 1989 amendment to the statute and explained in Kirkland v. Riverwood International USA Inc., 681 So.2d at 336-337, as follows:
We therefore hold that the appropriate standard under the amended Section 1061 for determining whether the contract work is part of the alleged principal’s trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another. Among those factors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
*278 (2) Whether the work was specialized or nonspecialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
|fi(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Kirkland, 681 So.2d at 336-337. (Footnotes omitted). Whether the contractor’s work is part of the principal’s trade, business, or occupation is a factual issue to be resolved on a case-by-case basis. Id. at 337.
In this case, Bredero supported its summary judgment motion with a copy of an agreement in which ETS agreed to supply Bredero with general laborers at a specific rate per hour. Further, Bredero attached a copy of ETS’s customer order form indicating which laborers were sent to their customer, Bredero. Finally, Bredero also included portions of Merrick’s deposition taken in the workers’ compensation matter. In his deposition, Merrick stated that he had a time card at Bredero and he received the paycheck for his work at Bre-dero from Bredero, not from ETS. He stated that he reported directly to Bredero for work each morning. Bredero supplied him with the necessary tools he needed to complete the work its supervising employees instructed him to perform. He did not recall that anyone from ETS was on-site at Bredero to instruct him on his job duties. He also thought that the other employees that were performing the same type of work he was performing were not temporary employees, but regular employees of Bredero.
Merrick responded to Bredero’s Motion for Summary Judgment with numerous documents, including the pre-employment paperwork he completed at ETS, a copy of the time sheet contract between Bredero and ETS, a copy of the invoice from ETS to Bredero, a copy of ETS’s insurance coverage and portions of his deposition in the workers’ compensation proceedings.
Our review of the pleadings and other supporting documents supplied by both parties discloses that the following uncontested material facts were established. First, the nature of |fiBredero’s business encompasses pipe fabrication, sealing and insulation. Second, the work in this case, rolling pipes down a conveyor belt, is non-specialized. Third, the contract work supplied by ETS was “routine, customary, ordinary or usual” because general labor work, including pipe rolling, was part of Bredero’s daily operations as a pipe fabricator. Fourth, Bredero used its regular employees to perform the same work that Merrick performed. Fifth, Bredero possessed personnel and equipment, including a wheelbarrow and pipe-puller, necessary to perform the work that Merrick was contracted to perform. Sixth, no evidence was submitted regarding whether other businesses similar to Bredero normally contract out this type of work or whether they have their own employees perform the work. Seventh, ETS, Merrick’s direct employer, was an independent temporary labor supplier that insured its workers and, according to their contract, passed *279 the cost of workers’ compensation insurance and other employment-related taxes on to Bredero. Eighth, Merrick was engaged in the work specified in the contract between ETS and Bredero when he was injured. Finally, Merrick testified that he reported to Bredero each morning, punched a time card at Bredero and received a paycheck from Bredero for work he completed at its facility.
Considering the totality of the circumstances, the pleadings and supporting documents reveal that the contract work was part of Bredero’s trade, business or occupation. Consequently, the trial judge did not err in finding that Bredero was Merrick’s statutory employer. We find Merrick’s first assignment of error is without merit.
In his second assignment of error, Merrick contends that the trial judge erred in dismissing his entire suit against Bredero. Merrick argues that his intentional tort claim against Bredero should not have been dismissed because Bredero did not argue for summary judgment on that claim. Bredero contends that Merrick failed to “properly prepare a defense to the Motion for Summary Judgment” and, as such, his claim that the trial judge improperly dismissed his cause of action for intentional tort is barred. Our review of Bredero’s Motion for Summary Judgment reveals that Bredero did not specifically move for summary judgment on Merrick’s intentional tort claim. Further, both the original and the amended judgments dismissing Merrick’s suit do not specifically _L¡address Merrick’s intentional tort claim. Thus, it appears that the Merrick’s intentional tort claim, which was not the subject of Bredero’s Motion for Summary Judgment and was not addressed at the hearing on Bredero’s Motion for Summary Judgment, should not have been dismissed. Accordingly, we remand for further proceedings on Merrick’s intentional tort claim.
Based on the foregoing, the judgment of the trial court is hereby affirmed with respect to Bredero’s status as statutory employer. This matter is remanded with respect to Merrick’s intentional tort claim. Costs of this appeal are assessed equally to Merrick and Bredero.

AFFIRMED IN PART; REMANDED IN PART.