Judge Roland L. Belsome
| jThis appeal is taken from the trial court’s judgment, rendered after trial on the merits, determining that James Huey Fletcher was a statutory employee of Exx-onMobile (hereinafter Exxon). For the reasons that follow, we affirm.
Mr. Fletcher was diagnosed with pleural mesothelioma in 2015. Mr. Fletcher, now in his 70s, worked at Keiser Aluminum in 1963 until 1966. He later worked in a tool trailer at the Exxon refinery in Baton Rouge, Louisiana from 1988 until 1999. After Mr. Fletcher’s diagnosis, he and his wife filed suit against Kaiser, Exxon, and multiple other defendants alleging asbestos exposure. The only defendants that proceeded to judgment in this bench trial were Exxon and Anco Insulations. The trial court found that Exxon was Mr. Fletcher’s statutory employer during his time at the refinery. The trial court further found that Anco Insulations was not a cause of Mr. Fletcher’s exposure to asbes *469 tos-containing materials. Subsequently, Mr. Fletcher filed this appeal.[1]
On appeal, Mr. Fletcher maintains that the trial court erred in its finding that he was a statutory employee of Exxon.
[2This Court reviews the lower court’s determination of statutory employment status under a manifest error standard of review.[2]

Statement of the Case

Mr. Fletcher worked for J.E. Merit, a contractor that provided additional workers for Exxon during maintenance activities at the refinery known as turnarounds. Mr. Fletcher worked in a mobile tool trailer and was in charge of dispersing and collecting tools for other J.E. Merit workers. Mr. Fletcher disputes Exxon’s position that he was a statutory employee. He likens the facts of this case to Lewis v. Exxon[3]. In suggesting that this case raised the same issue as in Lewis, Mr. Fletcher maintains that certain activities performed by J.E. Merit, such as concrete work, indicate that J.E. Merit was contracted to perform new construction outside the scope of what Exxon’s direct employees would have the capacity to do.
In Lewis, the plaintiff was the direct employee of a contractor hired by Exxon to convert an inoperative ethanol unit to a unit that produced isopropanol. The plaintiff was injured while performing work related to the scope of the conversion. The evidence indicated that the task that the plaintiff was performing at the time of his injury was something Exxon’s direct employees were capable of accomplishing. The Lewis Court declined to view only that specific task when determining Lewis’ employment status, but rather stated that courts must look at the scope of work being performed by the contractor as a whole.[4] Ultimately, the Court determined that Exxon was not in the business of plant construction or the |sconversion of processing units.[5] Therefore, under those facts, Exxon was not a statutory employer for that contractor’s employees.
In the instant case, it was established by Exxon’s corporate representative that the refinery relied on contractors such as J.E. Merit to bring in additional workers to support its direct employees during maintenance activities on existing processing units known as turnarounds. Turnarounds were considered routine maintenance to keep the processing units in good working condition. Bringing in a contractor to assist in turnarounds helped Exxon accommodate the need for a fluctuating workforce. Exxon’s direct employees during these activities included machinists/millwrights, instrument technicians, and electricians. The workforce also included people that performed civil and structural work, such as excavation. During the turnarounds it was common to replace older equipment that was related to the use of the process unit. It was also necessary at times to replace the foundations that held the equipment. Just like with other turnaround and maintenance activities, when replacing foundations Exxon’s direct employees would work with the contractors to excavate and organize the activity.
Additionally, Kenneth Hebert was a project superintendent for J.E. Merit at the *470 time Mr. Fletcher was working at the Exxon refinery. He testified that J.E. Merit’s work was primarily on turnarounds. When asked about new construction, Mr. Hebert claimed that J.E. Merit would do “projects”. He described the projects as possibly having to “add an exchanger or a pump or a vessel to an existing unit.” Mr. Hebert stated that these things needed to be done while the processing unit was shut down during the turnaround. He also claimed that civil crews were provided to excavate dirt for foundations, set forms, and pour concrete.

]¿Law and Analysis

The exclusive remedy of an employee against his employer for work-related injuries is set forth in the Louisiana Workers’ Compensation statute, La. R.S. La. R.S. 23:1082. That exclusive remedy also extends to statutory employers under La. R.S. 23:1061. Based on the dates that Mr. Fletcher worked at Exxon, the parties agree that the applicable statutory provision for determining his employment status is La. R.S. 23:1061 as amended in 1989.[6] The statute establishes that a statutory employer is a principal who has contracted with others to perform work “which is part of his trade, business, or occupation.” The statute further reads that:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal’s direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal’s trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.[7]
Discussing La. R.S. 23:1061, the Louisiana Supreme Court, in Kirkland v. Riverwood Int’l USA, Inc., held that to determine whether the contract work is part of the alleged principal’s trade, business, or occupation the court must review, on a case-by-case basis, “all pertinent factors under the totality of the circumstances.”[8] Kirkland proceeded to provide the following eight factors to consider in ascertaining whether a statutory employment relationship exists:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
|fi(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
*471 (8) Whether the principal was engaged in the contract work at the time of the incident.[9]
The Kirkland Court further explained that under the 1989 version of § 1061, “[t]he presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the lack of another.”[10]
At the conclusion of trial, post-trial briefs were filed, and the trial court rendered judgment on February 4, 2016. In that judgment the trial court examined the evidence presented on the threshold issue of Mr. Fletcher’s employment status as it related to Exxon. In so doing, the trial court recognized the Kirkland test, and noted that the factors created guidelines that are not absolute or rigid, but are instead to be applied relatively when determining if the contract work is part of the principal’s trade, business, or occupation.
In applying the factors to the aforementioned testimony elicited at trial, the trial court determined that the work performed by J.E. Merit was routine ordinary regularly scheduled maintenance. J.E. Merit would replace, refurbish, or upgrade equipment due to wear and tear. These activities took place during the turnarounds Rwhile the processing units were shut down. J.E. Merit did not perform any extraordinary construction and/or repairs.
The record further supports that Exxon is in the business of transforming crude oh into multiple other products. This process occurs in processing units. The processing units warrant periodic maintenance which is performed during turnarounds. J.E. Merit was a contractor hired to help facilitate the turnarounds. Exxon’s direct employees oversaw and were involved in the activities. Additionally, Exxon had the tools, equipment, and personnel capable of performing the contract work.
When reviewing a trial court’s judgment under a manifestly erroneous standard, it is this Court’s function to review the record in its entirety to see if the trial court’s factual conclusions were reasonable.[11] If the record supports the factual determinations, this Court will not disturb the trial court’s findings, even if we would have found differently.[12] Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous.[13]

Conclusion

Based on this specific record, we cannot find that the trial court was manifestly erroneous in its factual findings. For that reason, the judgment is affirmed.
AFFIRMED

. Mr. Fletcher only appealed as to Exxon. The Anco Insulations ruling has not been appealed.

. Dominio v. Folger Coffee Co., 09-1278, p. 11 (La.App. 4 Cir. 2/10/10), 32 So.3d 955, 961. (citations omitted).

. 441 So.2d 192 (La. 1983).

. Id. at 199.

. Id.

.The Legislature later amended the statute in 1997, expressly providing for the provisions of the amendment to be applied prospectively only and that it would not apply to any causes of action arising before the effective date of June 17, 1997.

. La. R.S. 23:1061.

. 95-1830 (La. 9/13/96), 681 So.2d 329.

. Id. pp. 14-15, 681 So.2d at 336-37.

. Id. p. 14, 681 So.2d at 336.

. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 14-2592, p. 8-9 (La. 12/8/15), 193 So.3d 1110, 1115-16 (citations omitted).

. Id.

. Id.