723 So.2d 1135 (1998)
Mark W. DYER
v.
SERVICE MARINE INDUSTRIES, INC.
No. 97 CA 2622.
Court of Appeal of Louisiana, First Circuit.
December 28, 1998.
*1136 Jason Lyons, Barry P. Vice, Houma, for Plaintiffs-Appellants Mark W. Dyer & Nadine D. Dyer.
David K. Johnson, Baton Rouge, Robert I. Siegel and Michael B. Alker, New Orleans, for Defendant-Appellee Service Marine Industries, Inc.
BEFORE: SHORTESS, FITZSIMMONS, GUIDRY, and WEIMER, JJ., and CHIASSON,[1] J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
Plaintiffs, Mark and Nadine Dyer, appeal from the trial court's grant of a summary judgment in favor of defendant, Service Marine Industries, Inc., finding that Mark Dyer was its borrowed employee.

PROCEDURAL HISTORY
On or about February 16, 1994, plaintiff, Mark Dyer (Dyer), was employed by Curtis Callais Welding, Inc. (Callais) and worked at Service Marine Industries, Inc.'s (Service Marine) shipyard in Amelia, Louisiana, where he was injured while working on a vessel.
On June 20, 1994, Dyer and his wife, Nadine, filed suit in tort against Service Marine for injuries he sustained. The petition was later amended on two occasions to add new parties, Imperial Palace of Mississippi, Inc. and H.C. Waters.[2] Issue has been joined as to all defendants.
This matter was initially set for trial on December 2, 1996, but was continued until February 18, 1997. At a pre-trial conference held on January 6, 1997, the trial date was continued until July 21, 1997.
On January 22, 1997, Service Marine filed a motion to amend its original answer, alleging as an affirmative defense the exclusive remedy provisions of the Longshore and Harborworkers' Compensation Act (LHWCA) and/or the Louisiana Workers' Compensation Act. The trial court permitted the amendment.
On this date, Service Marine also filed a motion for summary judgment asserting that Dyer was its borrowed employee and thus, it was immune from tort liability under the LHWCA.
*1137 After a hearing, the trial court granted summary judgment and dismissed plaintiffs' claims against Service Marine on March 20, 1997.
It is from this judgment that plaintiffs now appeal.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir.5/20/94); 640 So.2d 616, 618. It is well settled that the granting of summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C .C.P. art. 966; Lewis v. Diamond Services Corporation, 93-1150, p. 5 (La.App. 1st Cir.5/20/94); 637 So.2d 825, 828, writ denied, 94-1638 (La.10/14/94); 643 So.2d 159.
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended La. C.C.P. art. 966(A)(2) to read as follows:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
In the 1997 Regular Session, the Louisiana Legislature amended the summary judgment law by amending and reenacting Sections C and E of La. C.C.P. art. 966 and by repealing Sections E and F of the article. In part, the purpose of these amendments was to clarify legislative changes made to La. C.C.P. art. 966 in 1996 (specifically, see 1996 La. Acts, 1st Ex.Sess., No. 9, § 1), and to set forth the burdens of proof which must be met by the respective parties when a motion for summary judgment is made. 1997 La. Acts No. 483, § 4; J. Ray McDermott, Inc. v. Morrison, 96-2337, p. 9 (La.App. 1st Cir.11/7/97); 705 So.2d 195, 202 writs denied, 97-3055, 97-3062 (La.2/13/98); 709 So.2d 753, 754. These burdens of proof are stated in Section C of amended La. C.C.P. art. 966 as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The new summary judgment law is retroactive, and therefore, is applicable to this case. See Blue, Williams & Buckley v. Brian Investments, Ltd., 96-1451, p. 6 (La.App. 1st Cir.6/20/97); 706 So.2d 999, 1002, writ denied, 97-2192 (La.11/21/97); 703 So.2d 1311.
Appellate courts are to review summary judgments de novo under the same criteria *1138 that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).

BORROWED EMPLOYEE
If Dyer is found to be the "borrowed employee" of Service Marine, he is covered by the LHWCA and is entitled to benefits under the Act. Benefits under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer. Melancon v. Amoco Production Co., 834 F.2d 1238, 1243 (5th Cir.1988)(allocation of costs amended on rehearing, 841 F.2d 572 (5th Cir.1988)).
The issue of whether a borrowed servant relationship existed is a matter of law for the court to determine. Fanguy v. Dupre Brothers Construction Company, Inc., 588 So.2d 1251, 1257 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 892 (La.1992). There are, however, nine separate factual inquiries underlying "borrowed employee" status. These nine factors are:
(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
(2) Whose work is being performed?
(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?
Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).
After reviewing the record in light of these nine factual inquiries, we find that Service Marine has failed to prove that a borrowed servant relationship existed so as to permit a summary judgment.
The essence of "employer/employee relationship" for workers' compensation purposes is the right to control, and four primary evidentiary factors considered in deciding the issue are: selection and engagement; payment of wages; power of dismissal; and power of control. Ledet v. Quality Shipyards, Inc., 615 So.2d at 993.
Clearly, Service Marine did not select and engage Dyer for employment. Service Marine also failed to prove that it had the obligation to pay Dyer. The determinative factor in resolving this issue is whether Service Marine furnished the funds from which Callais paid Dyer. Melancon v. Amoco Production Co., 834 F.2d at 1246. The record is devoid of any evidence as to how funds were obtained to pay Dyer.
Service Marine established that it had control over the work that Dyer was performing because the supervisors for Service Marine directed Dyer to the jobs to be done. It is also clear that Dyer's work as a welder was in furtherance of Service Marine's business. Additionally, Service Marine established that it could relieve Dyer of his services at the job site by informing Mr. Callias that they were not satisfied with his performance.
Service Marine failed to offer any evidence of an agreement, understanding or meeting of the minds between Callais and Service Marine. There is nothing of record as to the actual relationship that existed between Callais and Service Marine. We note that, on June 20, 1994, plaintiffs filed a request for production of documents. In this request, plaintiffs sought "[a]ny and all contracts, correspondence, memos, purchase orders, invoices, bills, billings, quotes, bids or any other written documentation or communication *1139 of any kind or nature between Curtis Callais Welding, Inc. and Service Marine Industries, Inc. or any of its subsidiary, parent or affiliated companies, which in any way pertain to the vessel(s), barge(s) or project upon which Mr. Dyer was working at the time of the accident ...." Service Marine never responded to this request.
From the record before us, it does not appear that Callais terminated its relationship with Dyer. In determining this factor, the emphasis should be on the lending employer's relationship with the employee while the borrowing occurs. Melancon v. Amoco Production Co., 834 F.2d at 1246.
Although Dyer was supervised by Service Marine employees, a representative of Callais, usually Curtis Callais, Sr., would visit the Service Marine shipyard every day and spend approximately two hours at the shipyard. Mr. Callais would make sure that all of his employees were there on time and also verified that they had the proper safety equipment. Additionally, Mr. Callais would also check to see if Service Marine needed any more of his employees. Callais did not keep track of the number of hours worked by Dyer, because Dyer punched a time clock at Service Marine. However, Dyer was paid directly by Callais.
The record also does not reflect that Service Marine furnished Dyer with any equipment. Dyer testified in his deposition that he did not know who provided the tools or equipment; he knew only that the tools and equipment were at the shipyard when he went to work.
Dyer was not employed with Service Marine for a considerable length of time. Dyer had only worked for Callais for approximately three months, and had been assigned to work at Service Marine shipyards during that time. In determining whether the employment was over a considerable length of time, the court, in Capps v. N.L. Baroid-N.L. Industries, Inc., 784 F.2d 615, 618 (5th Cir.1986), cert. denied, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986), noted that this factor was significant only when the special employer employs the special employee for a considerable length of time.
Moreover, the record does not indicate that Dyer's length of employment at Service Marine's shipyard allowed him to assess the risks and acquiesce to the work situation at Service Marine's shipyard. See Alday v. Patterson Truck Line, Inc., 750 F.2d 375, 379 (5th Cir.1985); Gaudet v. Exxon Corporation, 562 F.2d 351, 357 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

CONCLUSION
For the foregoing reasons, the judgment of the district court, granting Service Marine's motion for summary judgment and dismissing plaintiffs' claims, is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to defendant, Service Marine Industries, Inc.
REVERSED AND REMANDED.
FITZSIMMONS, J., dissents and assigns reasons.
FITZSIMMONS, Judge, dissenting with reasons.
I respectfully dissent from the majority's reversal of the summary judgment. The determination that Service Marine failed to prove that a borrowed servant relationship existed is misplaced due to its failure to consider the judicial concept of "dual employment."
In Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98); 710 So.2d 1077, the supreme court recently reiterated its repudiation of the limitation of "one master" in favor of "dual employers," who are solidarily liable for the torts of the borrowed servant. See also Blair v. Tynes, 621 So.2d 591 (La.1993); LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978). The Morgan case involved a temporary service provider who was in the business of loaning industrial laborers to a scrap yard business. The temporary agency sought immunity from a tort action against one of the loaned employees, asserting that the industrial laborer had become the "borrowed employee" of the scrap yard business.
*1140 In its assessment of the extension vel non of the jurisprudentially created "borrowed employee" defense to include temporary agencies, the court reviewed the existence of the theory of "borrowed employee" in relation to the evolving concepts of tort and strict liability:
Over the years, numerous courts and commentators expressed concern regarding the continuing applicability of the borrowed employee doctrine, especially considering the inconsistent results that the jurisprudential tests produced.... Since liability is based on the right of control, rather than actual control of the employee at the time of the accident, it is unreasonable to choose between the two employers when each shares the right to control the employee's actions.... Because the tests were so general, the outcome of many cases with parallel facts depended on which facts the courts chose to emphasize, creating inconsistent precedent.
* * *
While the borrowed servant defense focuses on which employer controlled the employee's actions, modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of "enterprise liability." (footnotes omitted).
Morgan v. ABC Manufacturers, Inc., 97-0956 at pp. 8-9, 11; 710 So.2d at 1081, 1083. See also Ermert v. Hartford Insurance Company, 559 So.2d 467 (La.1990).
Although the temporary agency had relinquished control of the details of the work to its customers, the Court observed that, nevertheless, it retained ultimate and overriding authority over its loaned workers. Moreover, the loaned employees furthered both businesses. In its conclusion, the Morgan Court pronounced that "both employers had contemporaneous control over Hines, and both contemporaneously benefitted [sic] from his labor. It is therefore reasonable that considering the overlapping control and shared financial interest that they share liability."
The facts in the instant matter present an even stronger posture for "dual employment" than those in Morgan. The majority points out that Service Marine had control over the work that was being performed and that it provided Dyer with his direction in the job to be done. Moreover, Dyer's work was in furtherance of the business enterprise of Service Marine, i.e., a welder in the construction of a massive floating casino. Although Dyer was paid by Callais, the computation of work hours was established at the Service Marine facility. The tools and equipment were not furnished by Callais.
What is good for the goose is good for the gander. The jurisprudence has established that both employers would share in tort liability vis-a-vis third parties; a fortiori, both should be liable in workers' compensation. The facts presented in the case militate in favor of dual employers; therefore, their sole liability to the employee is in workers' compensation. Accordingly, I would affirm the summary judgment in favor of Service Marine.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Imperial Palace and H.C. Waters are not parties to the present appeal.