| ¡¿DALEY, Judge.
Plaintiff/Appellant, Pedro Ortega, appeals a trial court judgment that dismissed his tort suit' against DefendanVAppellee, Semco, L.L.C. Ortega was employed by Workforce, Inc., a temporary labor supplier. He was assigned to work at the Semco shipyard in Lafitte, Louisiana, as a shipfit-ter, when he was burned on the leg on April 14, 1997. He sued Semco in tort. Semco filed a Motion for Summary Judgment, arguing that Ortega was their borrowed employee, and that under the Long-shore and Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et seq., Ortega’s exclusive remedy against Semco was workers’ compensation benefits. The trial court found that Ortega was a borrowed employee, and granted Semco’s Motion for Summary Judgment. This appeal follows.
In the instant case, we must consider whether Ortega (the temporary worker) may sue Semco (the borrowing employer) in tort. Under the Longshore and Harbor Worker’s Compensation Act, if an employee is injured while working, “the employer |ashall be liable for and shall secure the payment to his employees of compensation.” 33 U.S.C. § 904. “The liability of an employer ... shall be exclusive and in place of all other liability of such employer to the employee.” 33 U.S.C. § 905. The term “employee” means any person engaged in maritime employment including a ship repairman and ship builder. The term “employer” means an employer whose employees are employed in maritime employment. The exclusive remedy of a borrowed employee against the borrowing or special employer is workman’s compensation. Hall v. Equitable Shipyard, Inc., 95-1754 (La.App.. 4th Cir. 2/29/96), 670 So.2d 543.
The record shows that Ortega was hired by Workforce on January 10,1997 as a shipfitter to work at various shipyards. Ortega’s first shipyard assignment was Bo-land Marine. He was assigned to work at Semco’s shipyard on April 10, 1997, and *278 had worked there approximately two weeks when he was injured. After he received his assignment, Ortega reported directly to Semco each morning, and was assigned work and supervised by a Semco employee. Workforce did not maintain supervisory personnel at the Semco site. Workforce sold Ortega “personal” tools and gave him a hard hat, while Semco furnished all the welding equipment and materials needed by Ortega for his specific assignment.
During the time that Ortega was at Semco, he did not have contact with Workforce except to collect his weekly paycheck. He filled out a timecard with Sem-co, who reported his hours to Workforce. Workforce was in the business of supplying supplemental labor to shipyards, which Ortega’s assignment at Semco accomplished, and Semco was in the business of shipfitting, which Ortega performed on a ship at Semco. Ortega’s assignment to Semco was at the agreement of both employers and Ortega. Workforce and Sem-co had an oral agreement for Workforce 14to supply temporary laborers to Semco. If Ortega did not like working at Semco, he could request another assignment from Workforce. If Semco did not like Ortega’s work, it could terminate him from this assignment and their shipyard, though not from his employment at Workforce. Ortega received safety training from Workforce, not Semco, but Semco discussed safety at morning meetings attended by all workers on site. Ortega testified that he asked about workers’ compensation insurance when Workforce hired him, and Workforce told him that they carried the insurance for him.
Appellant Ortega argues that the trial court erred in not considering Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98), 710 So.2d 1077. Ortega contends that the Morgan case controls and under the language of the Morgan case Ortega is not limited to workers’ compensation, but has a remedy in tort. In the Morgan case, the Supreme Court considered the issue of whether an employer who is in the business of hiring out temporary employees to other businesses is liable for the tortious conduct of the temporary worker while in the performance of his temporary assignment. This, however, is not the question faced in the case before us. In this case, we must consider whether the borrowing employer (Semco) is liable to the borrowed employee (Ortega), in tort, for injuries he sustained while at work at the temporary job site, or if Ortega’s only remedy against Semco is workers’ compensation.
In Morgan, the Supreme Court recognized the “two masters rule” and held that both the lending and the borrowing employer could be liable to a third person for the torts of the borrowed employee. In Morgan, the injured party, Morgan, was not a third person. Morgan was an employee of the business where the temporary worker was assigned. Both the borrowed employee and a regular employee were working together at a scrap yard when plaintiff, the regular employee, was injured. The ^borrowing employer was supervising the temporary worker’s work activity. The regular employee was allowed to maintain a tort suit against the temporary worker and the company that supplied the temporary worker.
Prior to Morgan, courts determined liability/or an employee’s torts based upon a nine part “control” test to determine whether or not he was a borrowed employee.[1] Morgan recognized that the “control” *279 test could often show that each employer retained some control over the offending employee, albeit in different spheres of his employment relationship with both. The court stated:
[T]here is no legislative expression regarding the borrowed employee defense. It is a jurisprudential creation. The immunity provided to the general employer is in derogation of the general tort rights of victims. Thus the scope of the immunity must be strictly construed. See Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992). As we see it, the issue before this Court is not whether the scope of the borrowed employee defense should be restricted only to employers who exercise supervisory control over the borrowed employee. Rather, this Court must determine whether the borrowed employee defense extends to the circumstances of the instant case, namely, whether temporary agencies who are in the business of lending their employees under the supervision of others should receive the benefit of tort immunity.
The court held that tort immunity does not extend to the temporary agencies. The court recognized that the modern justification for an employer’s liability for its employee’s torts is “not so much based on the employer’s control of the employee’s actions, but on the concept of “enterprise liability.”[2] The court noted that because the temporary agency was in the business of loaning out its employees while passing the | ^control of the detail of their work on to the customers, both employers had contemporaneous control over the loaned employee and both employers’ businesses contemporaneously benefitted from his labor. “It is therefore reasonable that considering the overlapping control and shared financial interest that they share liability.” Morgan at 1083.. The Morgan court stopped short, however, of abrogating the “control” test used to determine whether an worker is a borrowed employee.
The Morgan decision was not without dissension. Justice Marcus, in his dissent, recognized that the majority opinion creates
... an inequitable result for employees working side-by-side based on the fortuitous nature of who injures them. An employee such as Morgan who is injured through the tortious conduct of a temporary employee is granted a tort recovery while employees injured by another regular employee are limited to worker’s compensation. The result is also unjust for the general employer. In situations such as this where an employee injures a co:employee, the special employer will always be immune from suit and the temporary employment service agency will shoulder the entire burden of paying for the employee’s tort. Therefore, it is not a situation of spreading the costs of doing business between dual employers, but rather a system of requiring the party least able to prevent the accident to pay for all of the damages caused by it.
Justice Marcus recognized that two people who worked side by side, seemingly co-employees, would have different remedies for their on-the-job injuries, simply because one was a temporary worker supplied by a temporary agency and one was a regular employee. This apparent inequity in the law was also recognized by Professor Galligan in his Law Review article on which the majority relied in Morgan.[3] As the jurisprudence currently stands, if Morgan, a regular employee, is hurt by a borrowed employee he can recover com *280 pensation benefits from his employer, and sue the temporary worker and the employer of the temporary worker in tort. If, however, the temporary worker is hurt due to the negligence of a co-worker or borrowing employer, he may recover only compensation and may not sue anyone in tort.
|7In Keller v. Evans Cooperage, 94-006 (La.App. 5 Cir. 5/31/94), 641 So.2d 552, this Court looked at a similar situation and concluded that ■ the temporary worker’s only remedy against his borrowing employer was workers’ compensation. This Court concluded that the statute granting tort immunity to statutory' employers did not violate due process or equal protection.
The instant case differs from Morgan in another way that is significant. Ortega falls under the LHWCA, whereas Morgan did not. Two post-Morgan LHWCA cases do not apply Morgan. In Foster v. Consolidated Employment Systems, Inc., 98-948 (La.App. 5 Cir. 1/26/99), 726 So.2d 494, writ denied, 99-0523. (La.4/30/99), 741 So.2d 14, this court considered a factual scenario identical to the scenario in Morgan but without applying Morgan. Foster, -an employee of Halter Marine (the borrowing employer) was injured by the act of Smith, who worked for Consolidated Employment Systems (the general, lending employer) at the Halter Marine site. The court used the nine part “control” test to consider whether, under the LHWCA, Smith was Halter’s borrowed employee. Finding that he was, the trial court granted summary judgment and dismissed Foster’s suit against Consolidated, holding that Foster’s sole remedy, under the LHWCA, is in workers’ compensation. The Supreme Court denied writs, and did not remand the case to this court to reconsider in light of Morgan.
In Dyer v. Service Marine Industries, Inc., 97-2622 (La.App. 1 Cir. 12/28/98), 723 So.2d 1135 (decided six months after Morgan was handed down), a LHWCA case, the First Circuit considered a factual scenario identical to the case at bar. Mark Dyer, an employee of Curtis Calíais Welding, the general or lending employer, was working at Service Marine’s shipyard (the borrowing employer), where he was injured. He sued Service Marine in tort. Service Marine filed a Motion for Summary ^Judgment arguing that Dyer was their borrowed employee, and that his exclusive remedy under the LHWCA was in workers’ compensation. The trial court granted the motion, finding that under the nine part test, Dyer was Service Marine’s borrowed employee. The First Circuit reversed the judgment, finding that an unresolved issue of material fact, the time length of Dyer’s employment at Service’s shipyard, precluded an outright finding that Dyer was Service’s borrowed employee. The Dyer court approved and used the same nine part “control” test to determine Dyer’s status. , The court did not address Morgan, nor was its remand based upon the trial court’s lack of consideration of Morgan.
We conclude that because Ortega is differently situated from the plaintiff in Morgan, his remedy against the borrowing employer is exclusively workers’ compensation. The nine part “control” test remains controlling to determine whether Ortega is Semco’s borrowed employer, and thus whether Ortega has the right to sue Semco in tort. This test[4] is similar to the *281 “control” test used in state workers’ compensation cases.
We find that, applying the facts to the nine part test, the trial court correctly determined that Ortega was Semco’s borrowed employee. Semco maintained control of Ortega’s immediate working environment and conditions, and also controlled what work Ortega performed, how he performed it, and furnished the specific tools and equipment he used. Ortega’s contact with Workforce, during his assignment, was limited to picking up his weekly paycheck.
| ¡Accordingly, we affirm the trial court’s judgment.
AFFIRMED.

. There is no fixed test, nor is the existence of a contract or any other single factor determinative, but the following factors should be considered in determining the existence of a borrowed servant relationship: "(1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer’s work was being performed at the time in question; (7) agreement, either implicit or explicit between the borrowing and lending employer; (8) furnishing of necessary instruments and the place for performance of the *279 work in question; (9) length of time in employment, (10) acquiescence by the employee in the new work situation.” Morgan v. ABC Manufacturer, 96-59 (La.App. 5 Cir. 1/15/97), 694 So.2d 394.

. The concept of enterprise liability was recognized by Professor Galligan in Galligan, A Primer on the Patterns of Louisiana Workplace Torts, 55 La. L.R. 71 (1994).

. See Footnote 2.

. These nine factors are: (1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer ter-mínate his relationship with the employee? (6) Who furnished tools and place for performance? (7) Was the new employment over a considerable length of time? (8) Who had the right to discharge the employee? (9) Who had the obligation to pay the employee? Ledet v. Quality Shipyards, Inc., 615 So.2d 990 (La.App. 1 Cir.1993).