Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,202-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EFREN GALINDO                                    Plaintiff-Appellant

versus

JOSE CASTILLO, J & T                             Defendants-Appellees
POULTRY SERVICES, LLC,
AND HOUSE OF RAEFORD
FARMS OF LOUISIANA, L.L.C.

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 50,322

Honorable Monique B. Clement, Judge

* * * * *

LAW OFFICE OF ALLEN COOPER, LLC          Counsel for Appellant
By: J. Allen Cooper, Jr.

DEPLASS, APLC                            Counsel for Appellee,
By: Linda H. Adams                       House of Raeford Farms
                                         of LA

JOSE CASTILLO                            In Proper Person

A. SHAWN ALFORD                          Counsel for Appellee,
                                         J & T Poultry Services,
                                         LLC

* * * * *

Before COX, THOMPSON, and ELLENDER, JJ.

**ELLENDER, J.**

Efren Galindo appeals a summary judgment that dismissed his tort claim against his employer, House of Raeford Farms LLC ("Raeford"). The district court found that Jose Castillo, the person who physically attacked Galindo on the worksite, was not a borrowed employee of Raeford's. Galindo now challenges that decision and raises other issues in an effort to take his claim outside the exclusive remedy of workers' compensation. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Raeford is a poultry producer and processor with a facility (Trans Farm #3) in Bernice, La. Galindo was employed there as a live haul supervisor, making $692 a week. Although Raeford hatches and raises the chickens, it uses independent contractors to catch and haul them to processing plants (which it also operates). One such contractor was J&T Poultry Services LLC ("J&T"). Raeford's chicken catching and loading agreement ("Agreement") with J&T designated J&T as an independent contractor: "under no circumstances should [Raeford] be considered the master, agent, principal, or employer of the Contractor or persons employed by the Contractor."

On June 10, 2021, a J&T crew arrived at Raeford's facility to catch and haul off a load of chickens; Galindo was to oversee their work. One of J&T's employees was Castillo. An argument arose when Galindo declined to blow fans over Castillo and his crew. According to the petition, Castillo ran up behind Galindo and forcefully knocked him to the ground, injuring him. In early June 2022, Galindo filed a disputed claim for compensation in

the Office of Workers' Compensation alleging he was temporarily, totally disabled but Raeford had paid no wage or medical benefits.

Two days later, Galindo filed the instant tort suit, in the Third JDC, against Castillo, J&T, and Raeford.[1]  Against Raeford, Galindo alleged Castillo was acting in the course and scope of his employment for *Raeford* when he committed the intentional tort, and this circumvented the exclusive remedy of compensation.  He alleged damages exceeding $50,000.

Raeford responded that, under the Agreement, J&T and its employees were independent contractors; thus, Raeford was not liable for their conduct. At any rate, Raeford further alleged, Galindo's exclusive remedy was his comp claim.

### SUMMARY JUDGMENT EVIDENCE

In September 2023, Raeford filed a motion for summary judgment fleshing out these arguments.  In support, it attached several documents:

**J&T's admissions,** affirming Castillo was an employee of J&T, and was at no time employed, managed, or controlled by Raeford; after this incident, Castillo was terminated for violating J&T's no-fighting policy.

**The Agreement,** designating J&T as an independent contractor and stating Raeford was not a master, agent, principal, or employer of any J&T employee.

**Deposition of Raeford's plant manager,** Jeremy Paul.  On cross-examination, he admitted that J&T's work is "integral" to Raeford's overall operation, J&T must comply with Raeford's schedule, and Raeford had the authority to tell J&T to fire an employee.  On direct, however, Paul said

---

[1] Castillo answered pro se, and J&T lodged general denials; neither of these parties is involved in this appeal.

2

J&T, as an independent contractor, determined the manner and methods of work; Raeford provided only the cages and trailers. He also testified Raeford did not "directly" supervise any independent contractor employee. Attached to the deposition were a supervisor's report of injury, referring to Castillo as a "contractor foreman," and an incident investigation report, calling him a "contractor supervisor."

**Workers' compensation file,** showing that, in the disputed claim, Galindo described Castillo as "a contracted employee" and that, in May 2023, he and Raeford settled the comp claim, pursuant to R.S. 23:1272, for a lump sum of $90,000 (plus a statutory attorney fee of $19,358) with a waiver of all claims he "has had, now has, or will have in the future" for workers' comp arising out of the incident on June 10, 2021.

Galindo opposed the motion, attaching two of the same exhibits (the deposition and the Agreement). Chiefly, he argued that Raeford exercised so much control over Castillo that it should be considered his statutory or borrowing employer. Specifically, Raeford effectively had Castillo fired, on the strength of its own no-fighting policy; controlled the time, place, and manner of Castillo's work; monitored him constantly; and provided the materials he used. Galindo also argued that chicken catching was an integral part of Raeford's overall poultry operation. All this, he contended, created genuine issues of material fact. Finally, he argued the comp settlement released only future comp claims, not tort claims.

**ACTION OF THE DISTRICT COURT**

After a hearing in June 2023, the district court issued a well-written 11-page ruling in April 2024. It identified the exclusive remedy, R.S. 23:1032 (A), but noted the exclusion for intentional tort, R.S. 23:1032 (B),

3

and found Castillo's conduct was intentional. It then addressed whether Raeford could be liable for Castillo's conduct: Castillo was officially an employee of J&T, which was only an independent contractor, and thus there was no direct liability under La. C.C. art. 2320. The court then found Castillo could not be a statutory employee of Raeford, as the services or work he performed were included in the Agreement, R.S. 23:1061 (A)(2).

The court then conducted a detailed analysis of whether Castillo could be considered a borrowed employee of Raeford. The deposition and Raeford's internal reports showed that Raeford did not fire Castillo, but reported his conduct to J&T, his employer, who actually fired him; J&T applied its own no-fighting policy; Raeford specified the time and place of work only to the extent necessary for business needs, but did not control the manner of J&T's work; J&T provided the manpower and lifts for the chickens, while Raeford provided only the cages and trailers; per the Agreement, Raeford's business was growing and processing chickens, while J&T's was catching them for processing, and thus not an integral part of Raeford's business. The court concluded this was not enough to create a genuine issue whether Castillo was a borrowed employee.

The court rendered summary judgment dismissing Galindo's claims against Raeford. Galindo appealed devolutively.

### GALINDO'S POSITION

Galindo asserts nine assignments of error, tracking the district court's item-by-item analysis. He concedes the general rule of the exclusive remedy, R.S. 23:1032 (A)(1)(a), but asserts the exception for intentional tort, *Cole v. State*, 01-2123 (La. 9/4/02), 825 So. 2d 1134, and agrees with the court's finding that Castillo's conduct was intentional. He argues that a

4

"borrowed employee" can make both employers liable for his intentional torts, citing *Morgan v. ABC Mfr.*, 97-0956 (La. 5/1/98), 710 So. 2d 1077, and that courts apply a nine-part test for finding a borrowed employee, citing *Dyer v. Serv. Marine Indus. Inc.*, 97-2622 (La. App. 1 Cir. 12/28/98), 723 So. 2d 1135. His first seven assignments track seven of these factors, arguing they militate in favor of finding borrowed employee status: (1) even though Castillo was technically fired by his own employer, J&T, the ultimate say-so was Raeford's; (2) Raeford fired him for violating *Raeford's* no-fighting policy; (3, 4) Raeford controlled the time and place of J&T's work; (5) Raeford monitored and directed J&T's work; (7) chicken catching is "part of the business" or "so closely related thereto as to become an integral part," citing *Thibodaux v. Sun Oil Co.*, 218 La. 453, 49 So. 2d 852 (1950), and *Picard v. Zeit Expl. Co.*, 92-2242 (La. App. 1 Cir. 3/11/94), 636 So. 2d 922.[2]

By his remaining assignments, Galindo urges the court failed to address whether Castillo's actions were sufficiently employment-related to create vicarious liability, under *LeBrane v. Lewis*, 292 So. 2d 216 (La. 1974), and whether the comp settlement released only future comp claims.

## STANDARD OF REVIEW

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966 (A)(3). A genuine issue is one about which reasonable persons could disagree. *King v. Town of Clarks*, 21-01897 (La. 2/22/22), 345 So. 3d 422. Any doubt as to a dispute regarding a

---

[2] This court is constrained to advise counsel that *Picard* was *reversed* on writ application, 94-1555 (La. 9/30/94), 642 So. 2d 862.

5

material issue of fact must be resolved against granting the motion and in favor of trial on the merits. *Id.* When the motion is made and supported as provided in Art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. La. C.C.P. art. 967 (B); *Latour v. Brock*, 23-00262 (La. 6/21/23), 362 So. 3d 405. Appellate courts review motions for summary judgment de novo, using the same criteria that governed the trial court's determination of whether summary judgment is appropriate. *Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Noland v. Lenard*, 55,342 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1133, *writ denied*, 23-01670 (La. 2/14/24), 379 So. 3d 32.

## DISCUSSION

By his first seven assignments of error, Galindo urges the court erred in granting Raeford's motion for summary judgment. Each assignment raises an alleged factual issue as to Castillo's borrowed employee status.

The theory of Galindo's claim is the vicarious liability of an alleged employer, Raeford, for the tort of an employee, Castillo. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. La. C.C. art. 2320; *Latour v. Brock*, *supra*. The obstacle to this claim is that the tortfeasor, Castillo, was an employee of J&T, and not of Raeford, the entity from which he is trying to recover.[3] The law recognizes the concept of the "borrowed employee," whereby a nonemployee may be "deemed to be under the control of the employer" sufficiently to impose vicarious liability. See,

---

[3] Another obstacle is the exclusive remedy, R.S. 23:1032 (A)(1)(a), which we will discuss under Galindo's eighth assignment.

6

e.g., H. Alston Johnson, 13 La. Civ. L. Treatise (Workers' Comp), 5 ed. (2010), § 58.  In essence, Galindo argues that Raeford exercised such control over the conduct of J&T's employee, Castillo, that Raeford should be liable for Castillo's tort.

To determine whether a worker is a borrowed employee, this court applies a nine-question test to the working relationship.  *Hernandez v. Aethon Energy Oper. LLC*, 54,623 (La. App. 2 Cir. 1/11/23), 355 So. 3d 726; *Rogers v. State*, 43,000 (La. App. 2 Cir. 4/30/08), 982 So. 2d 252, *writ denied*, 08-1178 (La. 9/19/08), 992 So. 2d 931.  The nine questions are:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

2. Whose work is being performed?

3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4. Did the employee acquiesce in the new work situation?

5. Did the original employer terminate his relationship with the employee?

6. Who furnished the tools and place for employment?

7. Was the new employment over a considerable length of time?

8. Who had the right to discharge the employee?

9. Who had the obligation to pay the employee?

On de novo review, we find no genuine issue of material fact that Castillo was not an employee of Raeford.  As the district court aptly noted, the documentary evidence permits *no finding* that Castillo worked for Raeford.  The Agreement unequivocally designates J&T as an independent contractor "separate and apart from" Raeford.  It further provides that "under no circumstance should [Raeford] be considered the master, agent, principal,

7

or employer of [J&T] or persons employed by [J&T]." No evidence, documentary or otherwise, states differently. Galindo alleged that Castillo was "employed by and/or acting as an agent of the defendant, House of Raeford, through his employment with J&T Poultry"; however, mere allegations and denials in pleadings do not constitute summary judgment evidence. La. C.C.P. art. 967 (B); *Latour v. Brock*, *supra*; *Origin Bank v. JPS Aero LLC*, 55,557 (La. App. 2 Cir. 4/10/24), 383 So. 3d 1148, *writ denied*, 24-00592 (La. 10/15/24), 394 So. 3d 817. As for question (3) under *Hernandez*, there is no genuine issue as to which party Castillo worked for.

We distinguish the case of *Morgan v. ABC Mfr.*, *supra*, as it involved a "temporary services provider" that supplied technical employees to borrowing employers under a contract placing them under the direction and control of the latter. Such is obviously not the case here; the Agreement gave J&T full control over its own employees.

Further, the summary judgment evidence does not permit the finding that Raeford had the right to discharge J&T employees. The Agreement states that J&T, not Raeford, "has, holds, reserves and retains the sole and exclusive right, privilege, obligation and responsibility of hiring, firing, paying, working, disciplining and selecting those persons as he/she chooses for his/her employees[.]" In deposition, Raeford's complex manager, Paul, stated several times that J&T's owner, Javier Ruiz, fired Castillo, not Raeford. Critically, in response to requests for admissions, J&T admitted that it, J&T, terminated Castillo's employment, pursuant to J&T's no-fighting policy. While this admission by J&T may not constitute a judicial confession against Galindo's interest, La. C.C.P. art. 1853, it is documentary proof of the fact. The only contrary suggestion is Galindo's argument that

8

Raeford strongly suggested or pressured J&T to fire Castillo; however, as before, mere allegations do not constitute summary judgment evidence. As for the all-important question (8) under *Hernandez*, as well as question (9), there is no genuine issue whether Raeford had the power to fire Castillo.

Galindo strongly argues the issue of control: Raeford controlled the time and place of J&T's work, monitored and directed J&T's work, and supplied most of the materials for J&T's work. The Agreement, however, provides that "nor does Raeford Farms, or any of its personnel, have any reserved right of control or authoritative control over any of [J&T's] employees or the conduct of the work[.]" In virtually any independent contractor situation, the principal must prescribe the when, where, and what of the work performed; otherwise, the work would be of no use to the principal. Directing the time, place, and desired outcome are inherent in the independent contractor relationship and, without more, do not transform the contractor into an employee.

Galindo cites Paul's statement in deposition that Raeford "monitored the pace of everything" and made "sure things flow properly[.]" While this is a degree of management and oversight, it is not control in the sense of an employer's authority over an employee. The evidence also shows that Raeford provided the cages and trailers for holding and carrying the chickens to processing; J&T provided the chicken catchers and lifts. This appears to be a logical application of the contractor's services to the principal's resources and does not transform J&T or its employees into Raeford's employees. As for questions (1), (2), and (6) under *Hernandez*,

there is no genuine issue whether Raeford directed the manner and method of J&T's work.[4]

Galindo also argues that chicken catching is such an "integral part" of Raeford's overall operation that those performing it must be considered employees. In support, he cites *Picard v. Zeit Expl. Co.*, *supra*, which was reversed on writ application and then superseded by a "part of the trade, business, or occupation" test, in *Kirkland v. Riverwood Int'l USA Inc.*, 95-1830 (La. 9/13/96), 681 So. 2d 329. Galindo further cites *Dyer v. Serv. Marine Indus.*, *supra*, as a case that applied the nine-question analysis but reversed a summary judgment, finding a genuine issue as to borrowed employee status. In *Dyer*, however, the court found *no agreement* between the two alleged employers: "There is nothing of record as to the actual relationship that existed between Callais [the welding contractor for which Dyer worked] and Service Marine [the shipyard that contracted welding services from Callais]." This is in diametrical contrast to the situation in the instant case, with the Agreement clearly allocating the roles of each party. *Dyer* is therefore distinguished.

The concept of "integral relation" was formerly an element of the test for statutory employees, a legal theory that does not apply to this case. The theory being advanced, borrowed employee status, does not apply this concept. *Hernandez v. Aethon Energy Oper.*, *supra*; *Rogers v. State*, *supra*. Even in the context of statutory employees, this court has noted that the integral relation test could result in "almost everything being said to be integrally related to the principal's trade, business or occupation." *Griffin v.*

_____

[4] The other questions under *Hernandez* do not have any special relevance to this case.

10

*Wal-Mart Stores Inc.*, 27,567 (La. App. 2 Cir. 11/1/95), 662 So. 2d 1042, *writ denied*, 95-3100 (La. 2/16/96), 667 So. 2d 1059.  Even if this argument were relevant, we would note that Raeford did not customarily use its own employees for chicken catching, did not have personnel for that purpose, and there was no showing that similar businesses did this kind of work with their own employees.  *Kirkland v. Riverwood Int'l*, *supra* at 14-15, 681 So. 2d 336-337.  The argument that chicken catching could be considered an integral part of Raeford's overall operation does not create a genuine issue of material fact.  Galindo's first seven assignments of error lack merit.

By his eighth assignment of error, Galindo urges the court failed to address whether Castillo's actions were sufficiently employment-rooted to create vicarious liability.  The theory of this claim is that the exclusive remedy does not extend to intentional acts, La. R.S. 23:1032 (B); the district court found that Castillo's conduct was intentional; and this conduct had the "purpose of serving the master's business," thus creating vicarious liability, *LeBrane v. Lewis*, *supra*.  He argues the facts are analogous to those in *Benoit v. Capitol Mfg. Co.*, 617 So. 2d 477 (La. 1993), and *Faust v. Mendoza*, 415 So. 2d 371 (La. App. 1 Cir. 1982), which found vicarious liability.  By his ninth assignment, Galindo urges the court erred in failing to address whether the comp settlement released only future compensation claims; he argues his tort rights were unaffected.

We pretermit discussion of these assignments.  For the reasons already assigned, we have found no genuine issue of material fact that Castillo was not an employee of Raeford.  Since Raeford cannot be vicariously liable for these acts, it does not matter whether they were

11

intentional or whether the settlement waived all tort rights. No relief can be granted either way. These assignments of error lack merit.

## CONCLUSION

For the reasons expressed, the summary judgment is affirmed. All costs are to be paid by Efren Galindo.

**AFFIRMED**.