764 So.2d 1214 (2000)
INSURANCE COMPANY OF NORTH AMERICA
v.
GAYLORD CONTAINER CORPORATION and XYZ Insurance Company.
Johnny LaBauve
v.
Gaylord Container Corporation and XYZ Insurance Company.
No. 99 CA 0904, 99 CA 0905.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*1215 Gina Puleio Campo, New Orleans, Counsel for PlaintiffAppellantInsurance Company of North America.
Arthur J. Brewster, Metairie, Counsel for PlaintiffAppellantJohnny LaBauve.
Craig J. Robichaux, Bogalusa, Counsel for DefendantAppelleeGaylord Container Corporation.
Before: GONZALES, FITZSIMMONS, and WEIMER, JJ.
FITZSIMMONS, J.
Appellants, Murphy Johnny LaBauve ("LaBauve")[1] and Insurance Company of North America, the workers' compensation insurer for V.P. Fairley (LaBauve's employer), appeal from a summary judgment granted in favor of Gaylord Container Corporation ("Gaylord"). The trial court found that a two-contract statutory employer relationship existed between La-Bauve and Gaylord, which entitled Gaylord to tort immunity from LaBauve's personal injury claim pursuant to La. R.S. 23:1061.[2] This court reverses.

LOUISIANA REVISED STATUTE 23:1061
Statutory employment status is derived from La. R.S. 23:1061, and it has evolved both legislatively and jurisprudentially through the years. Prior to the statute's amendment in 1989, in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), the Louisiana Supreme Court abandoned the previously accepted "integral relation" test between the contractor's work and the principal's trade, business or occupation to determine a statutory employment relationship. Berry precluded statutory employer status for work that was specialized per se, or in those instances in which the principal was not participating in the contract work at the time of the accident. Berry, 488 So.2d at 938-939. The decision in Berry also enumerated specific factors to be considered in determining the existence vel non of statutory employment.
Louisiana Revised Statute 23:1061, as amended in 1989,[3] was changed to provide in pertinent part:
A. When any person, in this Section referred to as the "principal", undertakes *1216 to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him .... The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
Following the shakeup of the Berry test by the 1989 amendment to La. R.S. 23:1061, the appellate courts rendered conflicting interpretations. Construction of the amendment ranged from a denunciation of Berry, and return to the "integral relation" test, to a mere relaxation of the rigid and mechanical application of the test framed in Berry. See Favron v. Gulf States Utilities Company, 93-1603, pp. 6-8 (La.App. 1st Cir.11/23/94), 649 So.2d 983, 986-987; Kerner v. Marice Guillot Realty, Inc., 96-0271, pp. 3-4 (La.App. 4th Cir.3/26/97), 692 So.2d 19, 21, writ denied, 97-1093 (La.6/20/97), 695 So.2d 1353.
In Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329, 335, the Louisiana Supreme Court clarified the interpretation to be applied to the 1989 amendment of La. R.S. 23:1061. The court explained that the legislative amendment constituted a retraction of the Berry pronouncement that specialization was determinative of the absence of a statutory employment relationship; however, the court emphasized that consideration of "all pertinent factors under the totality of circumstances" was not intended to be superceded. Kirkland, 95-1830, p.14, 681 So.2d at 336. The court thereafter delineated eight non-exclusive factors to be weighed in considering whether there was a viable statutory employment relationship:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
Kirkland, 95-1830, pp.14-15, 681 So.2d at 336-337.
Although Kirkland was handed down well after Mr. LaBauve's accident, its holding is controlling. Appellate courts are bound to use the law in existence at the time of the decision. See Almon v. Almon, 97-2004, p.5 (La.App. 1st Cir.9/25/98), 718 So.2d 1073, 1077. Interpretive jurisprudence should be applied retroactively. Id.

SUMMARY JUDGMENT
Summary judgments are considered de novo on appeal. Sanders v. Ashland Oil, Inc., 96-1751, p.7 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (10/31/97), 703 So.2d 29. *1217 They are a procedural device favored by the courts to avoid a full-scale trial when there is no genuine factual issue under contention. Sanders, 96-1751 at p.5, 696 So.2d at 1034. A particular fact in dispute may be deemed material for summary judgment, if such fact potentially insures or precludes recovery, affects the litigant's ultimate success or determines the outcome of the legal dispute. Hicks v. Central Louisiana Electric Company, Inc., 97-1232, p.3 (La.App. 1st Cir.5/15/98), 712 So.2d 656, 658. Since applicable substantive law determines materiality for summary judgment purposes, the existence of a particular disputed material fact can be evaluated only in light of substantive law applicable to the case. The determination of whether the contract work being performed by LaBauve for Fairley was part of Gaylord's trade, business or occupation necessitates a multifarious fact-based inquiry to consider the "totality of the circumstances." In this regard, the supreme court has noted that the totality of the circumstances inquiry associated with statutory employment status frequently renders summary judgments difficult. Kirkland, 95-1830 at p.15, 681 So.2d at 337.
In the case sub judice, LaBauve was employed as a truck driver for V.B. Fairley. At the time of the accident, he was in the process of delivering pulpwood to Gaylord on behalf of Whitfield Timber Company ("Whitfield"); the pulpwood he was hauling came from Whitfield's yard. While parked on the Gaylord premises, LaBauve fell into a hole. Robert T. Carter, the manager of fiber supplies for Gaylord, stated in deposition that the only written agreement between Whitfield and Gaylord consisted of a pulpwood procurement document, which was entered into the record. That document, dated September 15, 1992, provided a rate of payment based on per ton delivery. It additionally provided that "all timber delivered by the seller hereunder will become the property of the buyer when the said timber has been delivered by seller to the unloading point, and has been removed or detached from the truck ... used to transport the said pulpwood hereunder." The document was, however, signed only on behalf of Gaylord. Thus any contract between the parties would have to have been based either on a verbal agreement or action clearly indicative of consent. La. C.C. art. 1927.
According to Robert T. Carter, in 1992, Gaylord did not have employees who cut or loaded the timber; nor did Gaylord possess or own equipment for cutting, skidding or loading. Gaylord hauled no logs in trucks; however, 20% of the short wood processed at the mill was produced by Gaylord. At the time of the incident, approximately 50-75 deliveries of short wood were made to the Gaylord mill per day. Whitfield was one of approximately 100-125 "dealers" who obtained wood from other sources and then sold and delivered pulpwood to Gaylord. All dealers were required to carry insurance; however, Carter admitted that there was no procedure for confirming that the dealers actually possessed valid insurance.
Carter stated that, after being weighed, the trucks carrying pulpwood proceeded to a receiving point, called a flume, where onsite Gaylord employees unloaded the wood. Whitfield's set rate payment per ton of wood also included reimbursement for the freight costs. These costs might vary depending on the distance of the loading point from the mill. The pulpwood was then processed at Gaylord's paper mill. There was no understanding between the parties relative to a specific quantity of timber. In addition to delivering timber to Gaylord, LaBauve delivered to other unrelated locations, including timber mills in Mobile, Alabama, and Wiggins, Mississippi. LaBauve also stated, via affidavit, that he hauled dirt, gravel and other products in a dump truck for Fairley.
The agreement between Gaylord and Whitfield was thus limited to the price that Gaylord agreed to pay for received deliveries by Whitfield. LaBauve was performing the single service of delivering pulpwood at the Gaylord site for the purpose of selling it to Gaylord on behalf of Whitfield. *1218 The lack of any obligation by Whitfield to sell to Gaylord, or to perform a specific service in favor of Gaylord, negates the possibility that Fairley's employee was a statutory employee of Gaylord. Moreover, although Gaylord appears to have customarily bought any pulp wood that was delivered by its various dealers, there has been no demonstration that it was under any legal obligation to do so.
For these reasons, the trial judge clearly erred in the grant of summary judgment. The summary judgment in favor of Gaylord Container Corporation is reversed. The matter is remanded to the trial court for proceedings consistent with this decision. Costs associated with this appeal are assessed to Gaylord Container Corporation.
REVERSED.
NOTES
[1] The pleadings are entitled "Johnny LaBauve;" however, the plaintiff's full name is apparently "Murphy Johnny LaBauve," as indicated on his affidavit of record.
[2] At oral argument, counsel for Gaylord admitted the trial court erred in applying the "two contract" theory and abandoned any argument relative thereto. Argument was limited to the application of the statutory employee defense based on La. R.S.23:1061.
[3] See Acts 1989, No. 454, § 3. eff. Jan. 1, 1990. Louisiana Revised Statutes 23:1061 was subsequently amended again in 1997; however, we apply the law in effect at the time of Mr. LaBauve's accident in 1992. Davis v. United General Insurance Co., 94-0875 (La.7/1/94), 639 So.2d 1180, 1181.