# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 03-267

**WILLIAM M. KELLER**

**VERSUS**

**CLEADIEUS MCLEOD, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 97-8098
HONORABLE FRED GODWIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Rudie J. Soileau, Jr.**
**Thomas Townsley**
**717 Pujo St.**
**Lake Charles, LA  70601**
**(337) 433-0110**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
         William M. Keller

**Charles N. Harper**
**Swift, Spears & Harper, L.L.P.**
**1135 Lakeshore Dr., 4ᵗʰ Floor**
**Lake Charles, LA  70601**
**(337) 433-0707**
**COUNSEL FOR DEFENDANT/APPELLEE:**
         Hercules, Inc.

**Patrick J. Briney**

**Richard R. Montgomery**
**Briney & Foret**
**P. O. Box 51367**
**Lafayette, LA  70505-1367**
**(337) 237-4070**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
            **Load Right Timber Sales, Inc.**
            **Clarendon National Insurance Co.**

**Michael E. Parker**
**Allen & Gooch**
**P. O. Drawer 3768**
**Lafayette, LA  70502-3768**
**(337) 291-1350**
**COUNSEL FOR INTERVENORS/APPELLANTS:**
            **Kenneth Parker Logging, Inc.**
            **Louisiana Safety Association of Timbermen Self Insurer's**
                        **Fund**
            **Safety National Casualty Corporation**
            **Sedgwick Claims Management Services, Inc.**

PETERS, J.

William M. Keller and his wife, Audrey, brought this suit to recover damages for injuries he sustained in an October 15, 1996 accident that occurred at the Hercules, Inc. (Hercules) plant located in Lumberton, Mississippi. After Mr. Keller presented his evidence at trial, the trial court granted a directed verdict in favor of Load Right Timber Sales, Inc. (Load Right) and its insurer, Clarendon National Insurance Company, [1] dismissing them from the litigation. Mr. Keller and various intervenors in the litigation[2] (hereinafter referred to collectively as "Parker Logging") appeal the trial court judgment granting the directed verdict. The trial court rendered a subsequent judgment granting Hercules' peremptory exception of prescription and dismissing it from the litigation. Mr. Keller and Parker Logging appeal that judgment as well. For the following reasons, we affirm the trial court's judgments in all respects.

## DISCUSSION OF THE RECORD

The facts applicable to the judgments below are not in dispute.

---

[1] For purposes of this opinion, we will refer only to Load Right when referencing its insurer as well.

[2] The intervenors included Kenneth Parker Logging, Inc., Mr. Keller's borrowing employer; Louisiana Safety Association of Timbermen Self Insured Fund and Safety National Casualty Corporation, the workers' compensation carriers; and Sedgwick CMS, the third-party administrator of the claim. As stated above, for convenience, we will refer to all intervenors collectively as "Parker Logging."

Load Right is in the business of buying and selling trees, leasing and renting flatbed trailers, and delivering tree stumps to various locations. Hercules uses tree stumps at its various facilities, including its Lumberton, Mississippi facility. Accordingly, on January 11, 1996, Load Right and Hercules entered into two written contracts for the harvesting and hauling of "dead pine stumps and dead and down pine topwood" (hereinafter referred to collectively as "stumps"), namely, the "Harvesting Contract" and the "Freight Contract." Pursuant to these contracts, Hercules agreed to pay Load Right to harvest tree stumps from various locations specified by Hercules and to haul the stumps to Hercules' facilities.

At the time the parties entered into these contracts, Load Right owned flatbed trailers capable of carrying the stumps. However, according to Cleadieus McLeod, one of Load Right's owners, the company "desired to have self-insured contractors doing as much of the [Hercules contract] work as possible." Because Load Right had an ongoing business relationship with Parking Logging, it engaged Parker Logging to extract the stumps from the ground. Additionally, because it also had an ongoing business relationship with Michael W. Savell Trucking (Savell Trucking),

3

Load Right negotiated an agreement with Savell Trucking on behalf of Parker Logging whereby Savell Trucking would provide the tractor rigs and drivers to pull the flatbed trailers once the trailers were loaded with stumps. Pursuant to these agreements, Savell Trucking would deliver the flatbed trailers to the harvesting location, where they would be loaded after Parker logging had extracted the stumps. After the trailers were loaded, Savell Trucking drivers would transport them to the Hercules facility.

Mr. Keller was one of the drivers employed by Savell Trucking. On October 15, 1996, he picked up a load of stumps and delivered them to Hercules' Lumberton facility. While cleaning dirt and debris from the flatbed trailer after the stumps had been unloaded, Mr. Keller sustained injuries when his left foot fell through a hole in the wooden floorboard of Load Right's trailer. Parker Logging provided workers' compensation benefits in connection with Mr. Keller's injuries.

On October 8, 1997, Mr. Keller and his wife[3] filed the instant suit, initially naming only Load Right and Mr. McLeod[4]

---

[3]Mrs. Keller later dismissed her claim.

[4]Before trial, the trial court granted a summary judgment dismissing Mr. McLeod as a party defendant.

as defendants.  Shortly thereafter, on October 20, 1997, Parker Logging filed a petition of intervention seeking reimbursement for indemnity and medical benefits paid on behalf of Mr. Keller.  Mr. Keller added Hercules as a defendant on July 10, 1998.

The case went to trial against the remaining defendants.  At the close of the presentation of evidence by Mr. Keller, Load Right moved for a directed verdict on the basis that it was Mr. Keller's statutory employer and as such was entitled to statutory immunity.  The trial court granted the directed verdict and dismissed the claim against Load Right.

Hercules then filed an exception of prescription, which the trial court declined to rule on at the time.  The case thereafter proceeded with Hercules as the only defendant.  Upon completion of the presentation of all evidence, the jury returned a verdict establishing Mr. Keller's damages at $731,000.00 and apportioning the fault among the various parties causing Mr. Keller's injuries as follows:  Hercules, 10%; Load Right, 50%; Savell Trucking, 37%; and Mr. Keller, 3%.  Thereafter, the trial court granted Hercules's exception of prescription and dismissed the claims against it. Mr. Keller and Parker Logging filed a motion for new trial, which the trial court

5

denied.

Mr. Keller and Parker Logging then timely filed this appeal, asserting that the trial court erred in granting Load Right's directed verdict and in granting Hercules' exception of prescription.

## OPINION

### *Statutory Employer Defense*

The rights and remedies granted to an employee under the Workers' Compensation Act are exclusive of all other rights, remedies, and claims for damages, except for intentional acts, against any principal. La.R.S. 23:1032(A)(1)(a). "[T]he word 'principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." La.R.S. 23:1032(A)(2). Louisiana Revised Statutes 23:1061(A) provided at the time of the accident the following in part:

When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings

6

are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer . . . .

Parker Logging urges this court to recognize a temporal element in the two-contract theory under La.R.S. 23:1061 for statutory immunity purposes. Specifically, it asserts that this court should recognize that in order for the general contractor to avail itself of statutory immunity, the contract between the principal and the general contractor must predate the contract between the general contractor and the subcontractor. Here, Parker Logging and Load Right had a preexisting relationship. Parker Logging contends that when Load Right entered into the contracts with Hercules, nothing had changed between Load Right and Parker Logging other than the amount of work being done and the destination of the trucks. In other words, there was no "new" contract in which Load Right made specific arrangements with Parker Logging to provide trucks, equipment, or drivers as a result of the contract with Hercules. Thus, Parker Logging contends that the trial court erred in granting the directed verdict because the "temporal element is lacking in this case."

Without commenting on whether the ongoing business

relationships were sufficient to constitute preexisting contracts in any event, we note that during the pendency of this appeal the supreme court decided *Allen v. State, through Ernest N. Morial—New Orleans Exhibition Hall Authority*, 02-1072 (La. 4/9/03), 842 So.2d 373, in which it concluded that La.R.S. 23:1032 and La.R.S. 23:1061 impose no temporal requirement on the two-contract defense. Thus, we reject Parker Logging's assignment of error in this regard.

Nevertheless, Mr. Keller asserts that Load Right did not assert the two-contract defense until the "eve" of trial and that, in any event, the two-contract defense requires a *service* contract, not a *sales* contract. He contends that the contract between Load Right and Hercules was an agreement of sale, while the contract between Load Right and Parker Logging/Savell Trucking was a service agreement.

As we appreciate Mr. Keller's position, he does not dispute that Load Right timely filed the affirmative defense of statutory immunity. Rather, Mr. Keller asserts that at the time the affirmative defense of statutory immunity was raised, Load Right urged the defense only pursuant to the "trade, business, or occupation" portion of La.R.S. 23:1061(A), and not pursuant to

8

the two-contract portion of that same statute. The trial court found that there was "no prejudice to [Mr. Keller] in this instance because [he had] known all along that there's a statutory immunity pled."

Pursuant to La.Code Civ.P. art. 1005, "[t]he answer shall set forth affirmatively . . . any . . . matter constituting an affirmative defense." Importantly, "[t]he policy behind [La.Code Civ.P. art. 1005] is the prevention of 'trial by ambush.'" *Patterson v. State*, 95-1668, p. 8 (La.App. 3 Cir. 12/11/96), 685 So.2d 473, 478, *writs denied*, 97-27, 97-108 (La. 2/21/97), 688 So.2d 513. "[T]ort immunity provided by the [Workers' Compensation] Act operates as an affirmative defense . . . ." *Brown v. Adair*, 02-2028, p. 5 (La. 4/9/03), 846 So.2d 687, 690. Because Mr. Keller was well aware of the affirmative defense of tort immunity, there was no trial by ambush. Mr. Keller has cited us to no authority, nor are we aware of any, that would require forfeiture of a timely pled affirmative defense because the specific bases of that defense were not disclosed until the "eve" of trial. Thus, we reject Mr. Keller's argument in that regard.

Concerning the nature of the contracts between Load Right and Hercules, the supreme court in *Allen*, 842 So.2d 373, 383, set forth the requirements of the two-contract

9

defense: "[I]n order to raise the 'two contract' defense, a defendant must establish only that: (1) it entered into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the defendant to fulfill its contractual obligation to perform the work, the defendant entered into a subcontract for all or part of the work performed." In the instant case, Load Right entered into a harvesting contract and a freight contract with Hercules; pursuant to the contracts, Hercules agreed to "buy" stumps from Load Right which were "harvested by [Load Right] from locations specified by Hercules and delivered to Hercules"; and, in order to fulfill its contractual obligations to harvest and deliver the stumps, Load Right entered into subcontracts with Parker Logging and Savell Trucking for this portion of the work to be performed.

However, because the contracts between Load Right and Hercules contained elements of sale, Mr. Keller argues that the two-contract defense is not available to Load Right. In support, Mr. Keller cites *Insurance Co. of North America v. Gaylord Container Corp.*, 99-904, 99-905 (La.App. 1 Cir. 6/23/00), 764 So.2d 1214. In that case, Murphy Johnny LaBauve was employed as

a truck driver for V. B. Fairley. Apparently in the course of this employment, Mr. LaBauve delivered pulpwood to Gaylord Container Corporation on behalf of Whitfield Timber Company. While on the Gaylord premises, Mr. LaBauve fell into a hole. The first circuit explained that the two-contract defense was not applicable and analyzed it instead under the "trade, business, or occupation" provision of La.R.S. 23:1061(A). The first circuit ultimately concluded as follows:

> The agreement between Gaylord and Whitfield was thus limited to the price that Gaylord agreed to pay for received deliveries by Whitfield. LaBauve was performing the single service of delivering pulpwood at the Gaylord site for the purpose of selling it to Gaylord on behalf of Whitfield. The lack of any obligation by Whitfield to sell to Gaylord, or to perform a specific service in favor of Gaylord, negates the possibility that Fairley's employee was a statutory employee of Gaylord. Moreover, although Gaylord appears to have customarily bought any pulp wood that was delivered by its various dealers, there has been no demonstration that it was under any legal obligation to do so.

*Id.* at 1217-18.

In the instant case, Load Right was to perform work in fulfillment of the contracts with Hercules to the extent of harvesting and then delivering the stumps. Moreover, Mr. Keller admits that the contracts between Load Right and Parker Logging and Savell Trucking were service contracts. Although interpreting a different version of the statute, the supreme court in *Hart v. Richardson*, 272 So.2d 316, 319 (La.1973), explained: "There is no reference in

11

the act to an exclusion from coverage because there exist elements of a vendor-vendee relationship between the injured workman and the one sought to be held as an employer. If all the other elements are present required by the act before there is coverage . . . and the injured workman is performing a necessary and indispensable activity which is part of the business operation of the one sought to be held as 'employer,' the mere fact that elements of sale are present in the relationship will not defeat recovery."

Likewise, under the version of La.R.S. 23:1061 in effect at the time of the accident, there is no reference to an exclusion from coverage because elements of a vendor-vendee relationship exist in one of the two contracts at issue. All that is required is that the principal "undertakes to execute any work . . . which he ha[s] contracted to perform, and contracts with any person . . . for the execution by or under the contractor of the whole or any part of the work undertaken by the principal." La.R.S. 23:1061(A). We find no error in the trial court's determination that Load Right was the statutory employer of Mr. Keller.

### *Prescription*

12

Finally, Parker Logging and Mr. Keller contend that the trial court erred in finding that Mr. Keller's timely filed suit against Load Right did not interrupt prescription against Hercules where Load Right was ultimately dismissed from the suit.

"Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." La.Civ.Code art. 2324(C). Further, "a suit timely filed against the employer for worker's compensation interrupt[s] prescription as to the subsequent claim against the third party tort-feasor for damages." *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So.2d 1383, 1390 (La.1993). In the instant case, Load Right was dismissed from the suit as being statutorily immune from tort liability, and there is no indication in the record that suit was timely filed against Load Right for workers' compensation benefits.

In *Layman v. City of New Orleans*, 98-0705 (La.App. 4 Cir. 12/9/98), 753 So.2d 254, Arthur Layman timely filed suit against several defendants, including the New Orleans Convention Center, in connection with injuries he sustained while working at the Convention Center. Over four years after the alleged accident, Mr. Layman amended his original petition

13

to add Hufcor as a defendant. The trial court granted Hufcor's exception of prescription, and Mr. Layman appealed. The fourth circuit affirmed, stating:

The Convention Center is the acknowledged employer of the plaintiff. Layman sued only for negligence damages. He did not sue for worker's compensation benefits. Hufcor concedes that a claim against an employer for compensation benefits is solidary with the employee's claim against third party tortfeasors. But Hurcor argues that an employee has no cause of action against an immune employer for negligence. Therefore, Layman's suit which asserts no compensation claim against the Convention Center fails to state a cause of action for negligence against the Convention Center. Accordingly, plaintiff's suit asserts no claim against the Convention Center upon which a solidary relationship with Hufcor can be based. We conclude that the naming of the Convention Center as a defendant does not interrupt prescription as to Hufcor.

*Id.* at 256-57 (citations omitted) (footnote omitted).

Additionally, in *Williams v. Holiday Inn Worldwide*, 02-0762 (La.App. 4 Cir. 5/15/02), 816 So.2d 998, *writs denied*, 02-2116, 02-1875, 02-1906, 02-1983 (La. 10/14/02), 827 So.2d 408, 426, 427, 428, Vanessa Williams filed suit for damages for injuries she sustained as a security guard at the Holiday Inn Crowne Plaza. Ms. Williams timely filed suit against Holiday Inn Worldwide (later substituted as Bristol Hotel Company). Over a year after the alleged accident, Ms. Williams supplemented her original petition to include as a defendant, among others, Ernest Verges, an architect. Bristol/Holiday Inn was dismissed with prejudice on the grounds that it was Ms. Williams' statutory employer. Mr. Verges then filed an exception of prescription on the

14

ground that Bristol/Holiday Inn was not solidarily liable with him because it had been dismissed and, therefore, prescription had not been interrupted. The trial court denied the exception, and Mr. Verges filed an application for writs. The fourth circuit concluded:

As Bristol/Holiday Inn was dismissed with prejudice from the tort action, it is not solidarily liable with Verges . . . . The plaintiff never filed an action for workers compensation against Bristol/Holiday Inn or sought appellate review of Bristol/Holiday Inn's dismissal with prejudice. Therefore, plaintiff has no other remedies against Bristol/Holiday Inn. Bristol/Holiday Inn is not, and will not, be liable to plaintiff for any of her alleged damages. Therefore, the suit against Bristol/Holiday Inn did not interrupt prescription as to Verges . . . .

*Id.* at 1001.

Likewise, in the instant case, as Load Right was dismissed with prejudice from the tort suit as being the statutory employer of Mr. Keller, it is not solidarily liable with Hercules. Mr. Keller did not file an action for workers' compensation benefits against Load Right and therefore has no other remedies against Load Right. Load Right, therefore, is not liable to Mr. Keller for any of his damages, and, as a result, the suit against Load Right did not interrupt prescription as to Hercules.

**DISPOSITION**

For the foregoing reasons, we affirm the judgment below and assess one half of the costs of this appeal to William M. Keller and one half of the cost of this appeal to

15

Kenneth Parker Logging, Inc., Louisiana Safety Association of Timbermen Self Insurer's Fund, Safety National Casualty Corporation, and Sedgwick Claims Management Services, Inc.

**AFFIRMED.**